# HATFIELD, *Appellant,*

*v.*

# GRACEN et ux, *Respondents.*

## (No. 75-1879, SC 24712)

567 P2d 546

Keith Rodman, Eugene, argued the cause and filed a brief for appellant.

Frank E. Bocci, Eugene, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Holman, Howell and Campbell, Justices.

HOWELL, J.

**HOWELL, J.**

This is an action for damages in which plaintiff seeks recovery for personal injuries and property damages as well as punitive damages. Plaintiff's complaint alleged that the defendant James Gracen recklessly discharged a firearm which injured plaintiff and damaged his vehicle.[1] In a separate count, plaintiff also alleged that the defendant was negligent "in discharging his firearm in close proximity to and in the direction of the person of plaintiff." The jury returned a general verdict for defendants, and plaintiff appealed from the judgment entered thereon. We affirm.

Because of the jury verdict for the defendant, the facts are to be considered in the light most favorable to him. The defendant is the owner of a small, late-night grocery store known as the Community Market located near Eugene. At approximately midnight on the evening of September 25 or the morning of September 26, 1974, plaintiff and two companions, Parrott and Holliday, arrived at the store and parked their automobile in the store's parking lot. Plaintiff, who was driving, remained in the car while Parrott went into the store to make a purchase. As Parrott entered the store, another man passed him going out. After looking around inside, Parrott discovered the clerk, McCoy, lying down behind the counter. The clerk jumped up and announced that he had just been robbed. Parrott turned around and looked out the door in time to see that the man he had passed on the way in was getting into a truck or van in the parking lot. Parrott then ran out of the store and returned to plaintiff's vehicle. As he jumped into the car, he was shouting to plaintiff to follow the truck which was leaving the parking lot. Apparently, there was a substantial amount of shouting and confusion as

---

[1] James Gracen and his wife, Belinda Gracen, are the defendants. However, as James Gracen was the only one involved in the incident, we shall refer to him as the defendant.

Parrott attempted to explain what had occurred and to convince plaintiff to follow the truck.

At approximately the same time that Parrott was leaving the store and running back to the car, McCoy sounded a buzzer which alerted the defendant, who was working in a back room, that there was trouble at the front of the store. Defendant grabbed a holster containing a .38 pistol and hurried to the front room. McCoy met him on the way, informed him of the robbery, and gave him a brief description of the suspect. Defendant ran outside and saw Parrott getting into his car. Due to the poor lighting in the parking lot and the cursory nature of McCoy's description, the defendant assumed that Parrott was the robber. Defendant testified that he shouted twice in an effort to stop what he believed to be the getaway car. Although plaintiff and Parrott both testified that they heard no warning shouts, the jury could have found that this was due to Parrott's own shouting and the resultant confusion.

As plaintiff's car began to pull away, defendant drew his pistol from its holster and fired. The gun was loaded with .357 birdshot, and defendant was standing 40 to 50 feet away at the time. The charge shattered the window on plaintiff's door, and three of the pellets struck plaintiff in the head and lodged just above his left eye.

At trial, the defendant testified that as he drew his pistol he cocked it and immediately fired in the general direction of plaintiff's automobile, intending to hit the ground in between.

"I fired in the direction of the automobile which was leaving the parking lot at that time. * * * And I kind of fired in between. * * * I wasn't pointing it directly at the car, no. I was firing in between, at the ground, in the direction of the ground, in between the car and myself."

Defendant also testified that he did not actually aim the gun or look down the sights. Therefore, it is not clear whether the pellets from defendant's gun struck

plaintiff and his car directly or whether they ricocheted off the pavement.[2]

On appeal, plaintiff makes seven assignments of error. We will treat the more substantial ones first.

■ The underlying inquiry in this case, of course, must focus upon whether the defendant acted with due care in drawing his pistol and firing in the general direction of plaintiff's automobile, which he believed to be the getaway car. Under common law, one is privileged to use reasonable physical force in defending or recapturing property or in making an arrest. *See* Restatement of the Law of Torts (Second) §§ 77, 81, 87, 100, 118 (1965).[3] Moreover, so long as the degree of force employed is reasonable under the facts of the case, the defendant will not be liable for injuries to any innocent person whom he reasonably believes to be the guilty party, so long as his conduct is in accord with the degree of care which would be exercised by a reasonably prudent person under similar circumstances. *See* Restatement, *supra* at §§ 75, 111, 137.

■■ Plaintiff contends that the court erred in instructing the jury that defendant was privileged to "use physical force upon another person in defending himself, or a third person, in defending property, and in making an arrest or in preventing an escape." The instruction is taken from ORS 161.205(5). However, this statute deals only with criminal liability, and it is not directly applicable to cases involving civil tort liability. As a general rule, the existence of a statutory defense to a criminal prosecution does not necessarily mean that civil liability can be avoided as well, but no exception to this instruction was taken on these

---

[2] Plaintiff presented expert testimony which indicated that the pellets could not have ricocheted off the pavement with sufficient force to shatter the safety glass in plaintiff's door. However, in our view, it is immaterial whether the shot struck plaintiff directly or not, for plaintiff apparently has never contended that defendant actually *intended* to shoot the car or its occupants, and the only evidence on this point is to the contrary.

[3] A similar privilege is provided by statute as a defense to criminal liability. *See generally* ORS 161.205 et seq.

grounds. Instead, plaintiff argues that there was no evidence that the defendant was defending property, making an arrest or preventing an escape. Plaintiff also contends that no crime was committed in defendant's presence so as to authorize an arrest under ORS 133.225.[4]

■ The defendant testified that his reason or purpose in firing his gun was "to cause the fleeing vehicle to stop." There is no further direct evidence of defendant's motive for using physical force, but we believe that it is reasonable to infer from this testimony and from the events surrounding the shooting that defendant was attempting either to defend and recapture his property or to make an arrest.[5]

■■ We also disagree with plaintiff's contention that the crime was not committed in defendant's presence so as to justify an arrest under ORS 133.255. Defendant was alerted to the robbery by a burglar alarm

---

[4]Plaintiff's exception was not a model of clarity, but we believe that it was sufficient to preserve the errors asserted on appeal:

"[Plaintiff's counsel] Now, I would take exception to the instruction which read, and I quote, 'I instruct you that a person may use physical force upon another person in defending himself, or a third person in defending property, and in making an arrest or preventing an escape.' First of all, I believe that there's no evidence of anyone trying to prevent the escape of an arrested person. And I think the law is that this applies to preventing the escape of an arrested person, and not just someone that may have committed a crime. And I think there's no evidence that in this case the—any arrest was attempted or made in defending property, or that physical force was used in defending property. And I think there was no evidence actually that any attempt was made to arrest anyone and force was used for that person [sic]. But I further and more broadly say that I take exception because it is my understanding the law is that a private party cannot in the State of Oregon effect an arrest unless it's for a crime committed in his presence. And there is no evidence whatsoever that the crime, if any, was committed in the presence of this gentleman, Mr. Gracen, the plaintiff [sic]. All of the evidence was to the effect it was not committed in his presence."

[5]Generally, there is no privilege to use *deadly* force simply for the purpose of defending or recapturing property. *See* Restatement (Second) Torts, §§ 79, 81, 105 (1965). *See also* State v. Weber, 246 Or 312, 319, 423 P2d 767 (1967). However, defendant did not object to the instruction which was given on this basis and did not request an instruction which would have drawn this distinction.

[ 308 ]

which was triggered by the clerk, McCoy. As defendant rushed to the front room he was met by McCoy and given a description of the thief who, at that time, was apparently still making his exit from the parking lot. In our view, these *circumstances* are sufficient to warrant a finding that the crime was committed in defendant's presence. *See* Restatement, *supra* at § 119, comment *m.*[6]

■■ We do agree, however, that there was no evidence which would indicate that the defendant could have been attempting to prevent an "escape" as that term is used in ORS 161.205(5), which was the statutory basis for this instruction. As subsequent provisions make clear, the privilege to prevent an escape refers only to an escape from lawful custody. *See* ORS 161.235 to 161.265. *See also* Restatement, *supra*, §§ 134, 135. The facts in this case could not give rise to a privilege to prevent such an escape, for there was no evidence that anyone was ever placed in custody prior to the shooting. Correspondingly, the instruction which was given was erroneous, at least in part, for the reason assigned by plaintiff in his exception.

■ However, as we have already noted, there was evidence sufficient to give rise to at least an inference that the defendant was attempting to defend and recapture his property or make an arrest. Under these circumstances, we do not believe that the error in this

---

[6]Comment *m* provides as follows:

"*m. Meaning of 'in the presence of the actor.'* The phrase 'in the presence of the actor' means that the actor by the use of his senses knows that the other is committing the act which constitutes the breach of the peace or the attempt to commit a felony. It is not enough that the act is done in the immediate neighborhood of the actor; he must be aware of its commission. On the other hand, it is not necessary that the act be done in the actor's immediate neighborhood. If the actor, by the use of any of his senses, perceives that an act is being done, and forthwith investigates and finds that the act constitutes a breach of the peace, he is privileged to arrest * * *.

"Illustration:

3. A, while passing B's house, hears a woman's scream. He rushes into the house and discovers that the woman was screaming because B was beating her. A is privileged to arrest B."

instruction could have been prejudicial. On the basis of the evidence in this case, it is extremely unlikely that the jury would have concluded that defendant was trying to prevent an escape unless they also concluded that he was attempting to defend and recapture his property or make an arrest of those he believed to be the thieves.

■ Plaintiff also contends that the court erred in failing to give his requested instruction relating to the degree of care which must be exercised in the use of a dangerous weapon. The requested instruction was as follows:

> "A loaded firearm is a dangerous weapon. One having control of such a firearm must exercise the utmost caution. The degree of care is commensurate with the dangerous character of the weapon. The care is such as ordinary cautious and prudent persons would exercise under similar circumstances."

While this instruction was approved by the court in *Gibson v. Payne,* 79 Or 101, 106-07, 154 P 422 (1916), we do not believe failure to give it in this case constituted reversible error. The jury was instructed that the degree of care required was that which was "in keeping with dangers apparent or reasonably to be expected at the time and place in question * * *." Moreover, the requested instruction in effect told the jury that a loaded firearm is dangerous and the degree of required care is commensurate with the dangerous character. We believe that the dangers involved in handling loaded firearms are sufficiently obvious to all persons so that the jury should have been able to apply the instructions on care which were given to the facts of this case.

Plaintiff's next assignment of error involves the trial court's failure to sustain his objection to questions relating to plaintiff's previous conviction for possession of less than one ounce of marijuana, a violation. On direct examination, plaintiff testified that he had never been convicted of a crime. On cross-examination, defendant attempted to bring out

the marijuana conviction, which, under ORS 161.515, was not a crime. *See also* ORS 161.565. The objection to the question was overruled, and plaintiff admitted the violation.

■ ■ Plaintiff's previous marijuana conviction was clearly not relevant to any of the issues involved in this case. However, on direct examination, plaintiff's attorney had opened the door to this kind of inquiry with equally irrelevant testimony concerning plaintiff's lack of a criminal record. Under those circumstances, and in light of the relatively trivial nature of plaintiff's conviction, we do not believe that plaintiff's case was sufficiently prejudiced to warrant a reversal of this action.

■ ■ Plaintiff also contends that the court erred in failing to give his requested instruction on contributory negligence, and in refusing to instruct the jury that plaintiff was not involved in the actual robbery and that the robbery was not committed in defendant's presence so as to authorize an arrest. Since the verdict returned by the jury found that the defendant was not negligent, any issue of plaintiff's contributory negligence could not have arisen. Similarly, plaintiff's potential involvement in the robbery was never an issue in this case, and an instruction on that subject was unwarranted. Finally, what we said earlier about defendant's right to attempt to make an arrest under the circumstances of this case disposes of plaintiff's contention that the jury should have been instructed that the robbery was not committed in defendant's presence.

Affirmed.