## THOMAS, *Appellant,*
### *v.*
## INMAN et vir, *Respondents.*
### (No. 76-136-L, SC 25193)
578 P2d 399

William H. Ferguson, Medford, argued the cause for appellant. With him on the brief were Grant, Ferguson & Carter, Medford.

Thomas D. Melum, Medford, argued the cause for respondents. With him on the brief were Frohnmayer & Deatherage, Medford.

Before Denecke, Chief Justice, Tongue and Bryson, Justices, and Richardson, Justice Pro Tempore.

BRYSON, J.

## BRYSON, J.

Plaintiff, personal representative of the minor decedent, Vincent Leroy Thomas, brought this action for wrongful death against defendants. Defendant Kenneth Inman, age 11 years, shot and killed Vincent with a shotgun owned by Kenneth's father, defendant William Inman. Judgment was entered on a jury verdict for defendants and plaintiff appeals.

Plaintiff's complaint alleged negligence on the part of the minor defendant, Kenneth, in pointing and shooting the gun at the deceased and negligence on the part of the father defendant, William Inman, in leaving a loaded shotgun in a place where he knew or should have known it was accessible to a child who had no training or maturity to handle loaded guns. Defendants filed a general denial.

The evidence, viewed in the light most favorable to the prevailing parties,[1] is as follows. Vincent Thomas, 10-year-old decedent, was visiting his cousin in Grants Pass in June 1975. The two boys went next door to defendants' house to play. Defendant Kenneth Inman and his younger brother were alone in the house when Vincent and his cousin arrived. Kenneth's parents were not home, but the boys' uncle was there. The uncle left on a temporary errand. Vincent and his cousin arrived some 15 minutes later. After some usual playing, the boys examined various guns, including a BB pellet gun and a .22 rifle. Kenneth then went into his parents' bedroom and took a shotgun from underneath the bed. He inspected the chamber of the shotgun twice and saw that it was empty; he therefore assumed that the gun was not loaded. He did not know there was a magazine underneath the chamber which contained shells. He had never fired the gun before. Kenneth pumped the shotgun, pointed it down the hall in the general direction of the other boys, although not at anyone or

---

[1] *Kubeck v. Consolidated Underwriters,* 267 Or 548, 550, 517 P2d 1039 (1974); *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973).

anything in particular, and pulled the trigger. The shot from the .12 gauge shotgun struck decedent Thomas.

Defendant William Inman testified that he left the shotgun under the bed to protect his home against intruders. Someone had previously pried the window screens out and tried to break into the house. He believed that the gun was hidden under the bed. The bedspread came to about one inch from the floor. He did not know that Kenneth could see the gun from the hallway through the small gap between the bedspread and the floor. As a further precaution, the children were told not to go into the bedroom. It was "off limits." Finally, he left the boys in the care of their uncle on the day of the shooting.

Plaintiff first contends "[t]he trial court erred in improperly * * * commenting on the evidence in the case during plaintiff's closing argument." Plaintiff is actually complaining that the trial court improperly prevented plaintiff from arguing certain evidence during closing argument. In that argument, plaintiff's counsel referred to a portion of the testimony of Patricia Inman, Kenneth's mother, as follows:

"[Plaintiff's counsel]: * * * The mother, I had her on the stand, I asked her whether in effect she thought about the possible danger of the shotgun that somebody might be seriously injured or killed if the thing accidentally was discharged?

"[Defendants' counsel]: Your Honor, that question was asked and objected to and sustained by the Court.

"[Plaintiff's counsel]: That's not correct, Your Honor, and she answered it specifically.

"[Defendants' counsel]: No, she did not. The mother's participation in the case has no bearing.

"THE COURT: Yes, I struck that out.

"[Plaintiff's counsel]: No, you struck—well, I won't argue with the Court. * * *"

Plaintiff is correct about the testimony. At trial, Mrs. Inman testified:

"Q  Did you know the shotgun was loaded?
"A  Yes, I did.
"Q  And you knew it could seriously injure or kill somebody if it was discharged?
"A  Yes, I suppose I did. I guess I didn't think about that." (This is the entire cross-examination of Mrs. Inman by plaintiff.)

Defense counsel and the court were evidently thinking about plaintiff's examination of another witness, the neighbor boy, in which plaintiff's counsel asked the boy if there were times he played at the Inman home when Mrs. Inman was not there. This question and the answer to it were stricken and is not questioned on appeal.

Plaintiff argues that the court's action constitutes a "comment on the evidence," citing ORS 17.255(1), which provides in part:

"* * * [T]he court shall state to them [jury] all matters of law * * * but it shall not present the facts of the case * * *."

Mrs. Inman was not a party defendant. It is difficult to understand from the record just what plaintiff intended by the argument, "* * * I had her on the stand, I asked her whether in effect she thought about the possible danger of the shotgun that somebody might be seriously injured * * *." If plaintiff was trying to convey to the jury that Mrs. Inman was negligent, of course this would not be proper. However, the evidence did come in without objection and generally could be argued for other purposes. However, we do not know the purpose of the argument as it was not explained by plaintiff. Under these circumstances, we conclude that the court's denial of the argument was harmless error.

[ 283 ]

Plaintiff next contends the trial court erred in giving the following instruction:

"If you find from the evidence that the discharge of the shotgun by Kenneth Inman was due to his immaturity and not as a result of negligence, then I instruct you to return a verdict in favor of the Defendant Kenneth Inman and against the plaintiff."

The trial court gave this instruction at the defendants' request, and plaintiff properly excepted to it.

■ The trial court also gave Uniform Jury Instruction No. 12.04,[2] correctly stating the law. *Nielsen v. Brown,* 232 Or 426, 445, 374 P2d 896 (1962). The "immaturity" instruction given was at best repetitious and it also destroyed the neutral form that instructions should have. *Richmond v. Fields Chevrolet Co.,* 261 Or 186, 193, 493 P2d 154 (1972). The instruction should not have been given. However, considering the instructions as a whole, as we do, *Hansen v. Bussman,* 274 Or 757, 781, 549 P2d 1265 (1976), we conclude that the jury was not misled by the two instructions and the giving of the instruction excepted to did not constitute reversible error.

Plaintiff's next two assignments of error concern the trial court's failure to give plaintiff's requested instructions which plaintiff contended were applicable to Kenneth Inman, the minor defendant. Requested instruction number 3 was:

"I instruct you that Kenneth Inman was negligent as a matter of law."

The remaining instructions would have told the jury that it was negligence per se to point or aim a firearm at any person or to intentionally pull the trigger of a firearm whether or not it is believed to be loaded without first aiming the firearm so that no damage would occur in the event it discharged.

---

[2]Uniform Jury Instruction No. 12.04:

"In considering charges of negligence against a minor, you are instructed that it is the duty of a minor to use the same care that a reasonably prudent person of the same age, intelligence and experience would use under the same or similar circumstances."

Because the basic facts in this case are not in dispute, the requested instructions all amounted to a request for a directed verdict for plaintiff on the liability issue as to the minor defendant. Plaintiff's first argument for finding negligence as a matter of law is based on ORS 166.190, which provides:

> "Any person over the age of 12 years who, with or without malice, purposely points or aims any loaded or empty pistol, gun, revolver or other firearm, at or toward any other person within range of the firearm, except in self-defense, shall be fined upon conviction in any sum not less than $10 nor more than $500, or be imprisoned in the county jail not less than 10 days nor more than six months, or both. * * *"

Although we have previously stated that violation of a statute or regulation is negligence per se, *Barnum v. Williams,* 264 Or 71, 74-75, 504 P2d 122 (1972); *Stachniewicz v. Mar-Cam Corp.,* 259 Or 583, 586, 488 P2d 436 (1971), the per se negligence rule could not apply to this case because Kenneth was only eleven at the time of the shooting and the statute applies only to persons who are twelve or older. Plaintiff argues that Kenneth, despite his age, should be held to an adult standard of care. The accepted rule is that a minor is held to the standard of a reasonable person of like age, intelligence, and experience under similar circumstances. *Simmons v. Holm et al,* 229 Or 373, 395, 367 P2d 368 (1961).[3] In *Nielsen v. Brown, supra,* at 446, we referred to 2 Restatement of Torts (Second), § 283A, comment *c,* which states:

> "An exception to the rule stated in this Section [the reasonable child of like age, intelligence, and experience rule] may arise where the child engages in an activity which is normally undertaken only by adults, and for which adult qualifications are required. As in the case of one entering upon a professional activity which requires

---

[3] Although we noted in *Nielsen v. Brown,* 232 Or 426, 445, 374 P2d 896 (1962), that this is the general rule, we also noted that we had previously applied the rule only to minor plaintiffs charged with contributory negligence. We did not finally decide in *Nielsen* whether to adopt the same standard for children charged with primary negligence. We now expressly do so, seeing no reasonable basis for distinguishing between the two.

special skill * * *, he may be held to the standard of adult skill, knowledge and competence, and no allowance may be made for his immaturity. * * *"

We did not adopt this rule generally, but only so far as it applied to operating automobiles. 232 Or at 451. Since *Nielsen,* we have not extended the rule to other activities. The principal reason for not extending the rule in this case is that the handling of guns in Oregon is not "an activity which is normally undertaken only by adults." In the rural districts of this state children, or those who have not been licensed to drive automobiles, have always used guns both for target practice and hunting under differing circumstances. Thus, although using guns is as dangerous as driving cars, the former activity does not meet the threshold requirement for coming within the Restatement exception to the general standard of care for minors. In addition, it appears from our research that no state that has considered the question has imposed an adult standard of care on a minor defendant who has injured a person with a firearm.[4]

Plaintiff also argues that even using the traditional standard of care, this court should hold as a matter of law that defendant Kenneth Inman was negligent. We discussed the role of the courts in setting the standard of care as a matter of law in *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607-08, 469 P2d 783 (1970), as follows:

"The issue of the defendant's negligence or the plaintiff's contributory negligence is frequently withdrawn from the jury and is resolved by the trial court or by this court as a matter of law. The jury is given a wide leeway in deciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court

---

[4] *Purtle v. Shelton,* 251 Ark 519, 474 SW2d 123, 125, 47 ALR3d 609 (1971); *LaBarge v. Stewart,* 84 NM 222, 501 P2d 666, 669 (1972); *Kuhns v. Brugger,* 390 Pa 331, 135 A2d 395, 68 ALR2d 761 (1957); *Prater v. Burns,* 525 SW2d 846, 851 (Tenn App 1975). *See generally,* Annot., 47 ALR3d 620 (1973).

intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it.

"Implicit in this process is the assumption that judges as well as juries know something about the kind of conduct that is deemed acceptable or not acceptable in the community and that, at least at the higher and lower ends of the continuum of that standard, the court can say that the conduct does or does not meet the standard."

*See also Kirtland v. Davis,* 276 Or 613, 616, 555 P2d 1262 (1976). We have also held that in determining whether certain conduct does constitute negligence, so as to require the directing of liability or a directed verdict, the court must decide that all reasonable minds could not differ on the question of defendant's negligence. *James v. Carnation Co.,* 278 Or 65, 67, 562 P2d 1192 (1977); *Oregon Auto. Ins. Co. v. Fitzwater,* 271 Or 249, 258-59, 531 P2d 894 (1975); *Ballard v. Rickabaugh Orchards, Inc.,* 259 Or 200, 203-04, 485 P2d 1080 (1971).

In this case, the age of defendant Kenneth Inman, the natural tendency of children toward childlike activity, even dangerous activity, and the degree of care exercised by Kenneth in trying to determine whether the shotgun was loaded, all made this a case in which reasonable minds could differ and thus made a question for the jury rather than for the court.

■   The only remaining instruction refused and relevant to the case against Kenneth Inman stated that "extraordinary care" is the standard for the use and possession of firearms. It would have been error to give this instruction with respect to Kenneth; as discussed above, the proper instruction was the "reasonable child" instruction. *See Hatfield v. Gracen,* 279 Or 303, 310, 567 P2d 546 (1977).

The other requested instructions concerned the negligence of William Inman. Instruction number 4 was as follows:

"I instruct you that the defendant, William D. Inman, was negligent as a matter of law."

[ 287 ]

■ In light of Mr. Inman's reasons for having the shotgun—an attempted burglary of his home—his attempt to conceal the shotgun from his children, his instructions to the children not to enter the bedroom, and the fact that the children's uncle was at the house on the day of the shooting, we are of the opinion that reasonable minds could differ as to whether Mr. Inman's actions were those of a reasonably prudent person. Therefore, the trial court did not err in refusing to instruct the jury that defendant William Inman was negligent as a matter of law.

Plaintiff cites no authority, and we have found none, for the proposition that one who leaves a firearm in a place accessible to children is negligent as a matter of law if a child takes the firearm and injures someone with it under the circumstances here existing and absent a statute prohibiting same. Plaintiff relies on *Kuhns v. Brugger,* 390 Pa 331, 135 A2d 395, 68 ALR2d 761 (1957).[5] In that case, however, the dispute was not whether negligence as a matter of law should be imposed, but whether an action for negligence would lie at all. The facts of *Kuhns,* in brief, were that defendant grandfather kept a loaded pistol in an unlocked dresser drawer in his unlocked bedroom. He allowed his grandchildren to enter the room when they visited him. On one such visit, a grandson removed the pistol from the dresser drawer and shot another grandson. On those facts, the court held that the question of the grandfather's liability "was clearly for the jury to determine." 135 A2d at 407. The dissent held that, as a matter of law, no liability could be imposed under the circumstances.

Thus, *Kuhns* does not support plaintiff's contention that defendants were negligent as a matter of law. Neither does *Reida v. Lund,* 18 Cal App 3d 698, 96 Cal Rptr 102 (1971), which again considers the issue of whether failure to prevent a gun from falling into the

[5]See also, Annot., 68 ALR2d 782 (1959); Garguilo, *Liability for Leaving a Firearm Accessible to Children,* 17 Clev-Mar L Rev 472 (1968).

hands of a child is actionable negligence. The court concluded that it was but did not state that it is negligence as a matter of law. 96 Cal Rptr at 105-06. Plaintiff's remaining instructions requested, and not given, were generally part of plaintiff's theory that the father, William Inman, was negligent as a matter of law. The instructions, standing alone, were not correct or complete statements of the law, constituted a comment on the evidence, and would have misled the jury. The trial court correctly instructed the jury on what constituted negligence. The test for directing verdicts in negligence cases shows that the issue of the father's negligence was for the jury under the facts of this case. The trial court did not err in refusing to give the instruction.

Affirmed.