62 P.3d 114 (2003)
J.R., Appellant,
v.
STATE of Alaska, Appellee.
No. A-7682.
Court of Appeals of Alaska.
January 31, 2003.
Mitchel J. Schapira, Anchorage, for Appellant.
Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.
Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

OPINION
COATS, Chief Judge.
On February 19, 1997, Evan Ramsey took a shotgun to Bethel Regional High School and murdered the principal, Ron Edwards, and a fellow student, Josh Palacios.[1] After an extensive investigation, the State discovered evidence that J.R. taught Ramsey how to use the shotgun, urged Ramsey to carry out his plan to kill Edwards and Palacios, and urged others not to interfere with Ramsey's plan. The State filed a petition for an adjudication of delinquency against J.R. A jury ultimately convicted J.R. of two counts of murder in the second degree on the theory that J.R. had knowingly engaged in conduct manifesting an extreme indifference to the value of human life.[2] J.R. appeals his convictions to this court. J.R. contends that the jury should have judged whether his conduct was reckless against the standard of a reasonable juvenilei.e., a reasonable person of his age, intelligence, and experience under similar circumstances. He argues that Superior Court Judge Pro Tem Mark I. Wood erred in instructing the jury that it should measure J.R.'s conduct against the standard of a reasonable persona reasonable adult. He contends that Judge Wood erred in refusing to allow him to argue that J.R.'s conduct was not reckless when compared to the conduct of a reasonable juvenile. We agree with J.R.'s contention that his conduct should be *115 judged by asking whether it conformed to the conduct of a reasonable juvenile. We accordingly reverse his convictions.
To obtain a conviction for murder in the second degree under a theory that the defendant acted with a manifest indifference to the value of human life, the State must show that the defendant acted with extreme recklessness.[3] The State's theory in J.R.'s case can be stated succinctly. Ramsey had a shotgun and talked about taking it to school to shoot people, including Edwards and Palacios. J.R. taught Ramsey how to operate the shotgun and encouraged Ramsey to follow through with his plan. J.R. also encouraged others not to interfere with Ramsey. The State contended that J.R.'s actions constituted second-degree murder under the theory that he had acted with extreme indifference to the value of human life and that this conduct was a cause of the deaths. J.R. contended that he believed that Ramsey was not serious about actually committing murder and that it was reasonable for him to conclude that Ramsey was just bragging and for him to respond in kind.
In general, the law requires a juvenile to meet the standard of care of a reasonable person of similar age, intelligence, and experience under the same circumstances.[4] But Judge Wood reasoned that because J.R. was engaged in an activity that involved the use of a firearm, J.R.'s conduct constituted an adult activity. He concluded that he should instruct the jury that J.R. should be held to the standard of care of a reasonable adult.
The State relies on Ardinger v. Hummell,[5] a civil case decided by the Alaska Supreme Court, in arguing that Judge Wood properly ruled that J.R.'s recklessness was to be judged against the standard of a reasonable adult. In Ardinger, fourteen-year-old Normandy Hummell took her mother's car without permission and allowed fifteen-year-old Joshua Van Bavel to drive the car.[6] When Coast Guard Security Officers attempted to stop the car, Joshua sped away, lost control of the car, and collided with a utility pole, causing his death.[7] Joshua's mother, Sherie Ardinger, both for herself and as a personal representative of her son's estate, sued Normandy and her mother on the theory that they had negligently allowed Joshua to operate the car, resulting in his death.[8] The trial court rejected Ardinger's request to instruct the jury that because fourteen-year-old Normandy was engaged in an adult activity, Normandy should be held to an adult standard of care. The trial court charged the jury that Normandy was to be held to a standard of care of a person of her own age, intelligence, knowledge, and experience under similar circumstances.[9] The jury entered a defense verdict in favor of Normandy and Pamela Hummell.[10]
On appeal, the supreme court relied on the Restatement (Second) of Torts in setting out the general rule "that children should be held to the standard of care of a reasonable person of the same `age, intelligence and experience under like circumstances.'"[11] The supreme court explained that public policy dictated that it would not be fair to hold a child legally responsible for a standard that most children would not be capable of meeting.[12]
But again, relying on the Restatement (Second) of Torts, the court recognized that an exception to the general rule "may arise where the child engages in an activity which is normally undertaken only by adults, and *116 for which adult qualifications are required."[13] The court stated:
Under Alaska law, exercising physical control of a motor vehicle on a roadway is an adult activity requiring a driver's license. Alaska law recognizes that operating a motor vehicle includes exercising dominion over or physical control of a motor vehicle just as it includes driving a motor vehicle. Children who physically control vehicles must, for public safety reasons, be held to an adult standard of care.[14]
The court concluded that Normandy's actions in entrusting the car to Joshua should have been evaluated under an adult standard of care. The court therefore reversed the jury verdict.[15]
The State contends that the reasoning of Ardinger supports the conclusion that the question of whether J.R. was reckless should also be judged under an adult standard of care. The State argues that a juvenile who engages in activities with a firearm is engaged in an adult activity and therefore should be held to an adult standard. The State cites several cases that it suggests support this view. But only one of these cases actually holds that an adult standard of care should apply to a juvenile who uses a firearm. In that case, Huebner v. Koelfgren,[16] a fourteen-year-old shot a BB gun that struck another boy above the eye. The Minnesota Court of Appeals held that "the adult standard of care should be imposed on and expected by a teenager handling a gun; the public generally has a right to expect a single adult standard of care from individuals who handle guns."[17] But the Minnesota Supreme Court has held, also in the context of an accidental shooting, that an adult standard of care does not apply in juvenile criminal proceedings.
In In re S.W.T.,[18] two twelve-year-old boys shot across a river in the general direction of other people, and one of the shots struck and killed an individual.[19] The juveniles were subsequently charged with aiding and abetting second-degree manslaughter.[20] The juvenile court, citing a civil case, held the youths to an adult standard of care because the activity involved "extreme danger."[21] On appeal, the supreme court held that the juvenile court erred in applying an adult standard and concluded that "in juvenile proceedings, the question of culpable negligence must be decided with reference to the conduct and appreciation of risk reasonably to be expected from an ordinary and reasonably prudent juvenile of a similar age."[22]
Each of the other two cases that the State relies on only generally address, in dicta, the adult exception as it relates to juveniles and activities involving firearms. In Goss v. Allen,[23] a civil case before the New Jersey Supreme Court, a seventeen-year-old skier struck another skier and was sued for damages for negligence.[24] The court held that the skier should be held to the standard of care of a reasonably prudent seventeen-year-old.[25] But in dicta, relying on the Restatement (Second) of Torts, the court stated:
We recognize that certain activities engaged in by minors are so potentially hazardous as to require that the minor be held to an adult standard of care. Driving a motor vehicle, operating a motor boat and hunting would ordinarily be so classified.[26]
In the second case, In re William G.,[27] a fifteen-year-old juvenile was adjudicated a *117 delinquent for charges that arose from his colliding with a parked car while he was riding in a shopping cart in a shopping center parking lot. The Arizona Court of Appeals held that "riding a shopping cart in a parking lot when done by a fifteen year old is an activity that must be judged by the standard of fifteen year olds of like age, intelligence and experience."[28] The court stated that the general rule in Arizona and throughout the country in civil cases was that a juvenile would generally be held to the standard of care of a reasonable person of like age, intelligence, and maturity. But again, in dicta, the court went on to explain that there was an exception for "special circumstances such as operation of an automobile, hunting, use of an inherently dangerous instrument or participating in an inherently dangerous activity."[29]
Contrary to the State's position, however, in addition to the Minnesota Supreme Court's decision in S.W.T., other courts in criminal cases have applied a juvenile standard of care to adolescents involved with firearms. For example, in In re Malter,[30] the Louisiana Court of Appeals held a fourteen-year-old boy to the standard of care of a like individual of similar age.[31] In Malter, the defendant was charged with negligent homicide for shooting and killing another youth with a BB gun.[32] In determining the standard of care to apply to the charge, the court stated:
In determining whether a juvenile's conduct has deviated beyond the reasonable man's standard of care, due regard must be given to the offender's age, maturity, intelligence and knowledge, both generally and as to the particular situation involved, as well as to all the facts and circumstances of the case, including the particular risk that produced the injury.[33]
While the court upheld the defendant's conviction, it did so only after concluding that the defendant's conduct failed to meet the standard expected of "a fourteen-year-old youth under similar circumstances."[34]
A second example is State v. Marshall,[35] which was decided by the Washington Court of Appeals. In Marshall, a fifteen-year-old boy was convicted of first-degree manslaughter for the shooting death of his sixteen-year-old friend.[36] The defendant challenged the conviction, arguing that the manslaughter statute was void for vagueness because it did not include a separate standard by which to assess juvenile accountability.[37] In denying the defendant's appeal, the court explained:
[O]ur holding does not mean a 15-year-old boy must act as a reasonable adult or risk a criminal conviction. The standard set forth in [the Washington manslaughter statute] is that of a reasonable man "in the same situation." The objective standard of reasonableness entails a certain flexibility.... In manslaughter cases, the juvenile status of a defendant is part of his situation and relevant to a determination of whether he acted reasonably. The trial court here recognized this, and correctly judged Mr. Marshall's actions in terms of his age.[38]
Furthermore, in examining the tort cases addressing the issue of what standard of care to apply to juveniles involved with firearms, we found that the majority declined to apply an adult standard of care.[39] Representative *118 of the cases in this area is the Oregon case of Thomas v. Inman.[40] In that case, an eleven-year-old shot and killed a ten-year-old with a shotgun.[41] The eleven-year-old and his father were sued for the wrongful death of the ten-year-old. The court rejected the argument that the child should be held to an adult standard of care.[42] In reaching its decision, the court analyzed the exception set out in the Restatement (Second) of Torts, which applies an adult standard of care where the child engages in activities that are normally undertaken only by adults and for which adult qualifications are required.[43] The court recognized that it had adopted an adult standard of care for juveniles engaging in activities such as operating automobiles.[44] But the court noted that it had not extended this rule to other activities. The court stated:
The principal reason for not extending the rule in this case is that handling guns in Oregon is not "an activity which is normally undertaken only by adults." In rural districts of this state children, or those who have not been licensed to drive automobiles, have always used guns both for target practice and hunting under different circumstances. Thus, although using guns is as dangerous as driving cars, the former activity does not meet the threshold requirement for coming within the Restatement exception to the general standard of care for minors. In addition, it appears from our research that no state that has considered the question has imposed an adult standard of care on a minor defendant who has injured a person with a firearm.[45]
Although Thomas v. Inman states the majority rule in civil cases, the State points to a draft of the Restatement (Third) of Torts, which expands on the position that there are certain dangerous activities that are characteristically undertaken by adults where the juvenile should be held to an adult standard of care.[46] The draft addresses firearms as follows:
Handling firearms is best regarded as a dangerous adult activity. The dangers involved in firearm use are obvious and dramatic.[47]
The draft of the Restatement (Third) does provide support for the State's argument that tort law may be changing to apply an adult standard of care where a juvenile is charged with negligence or recklessness in the use of a firearm.
We see three major barriers to adopting the State's contention that J.R. should be held to an adult standard of care in this case. The first we have already set out in some detailthe majority rule in tort cases rejects applying an adult standard of care where a juvenile negligently or recklessly injures another with a firearm. Second, even if tort law applied such a standard, there would be a serious question whether we should adopt such a rule in determining criminal responsibility. Tort law has different goals than criminal law. Tort law emphasizes compensating victims who have been injured by another's conduct. The real issue is often whether anyone should be required to compensate the injured party. In arguing for an adult standard of care for dangerous activities, the Restatement (Third) draft notes that "[i]f adolescents who engage in dangerous activities such as motoring were held to less than a full standard of care, the result in *119 terms of non compensation of victims of substandard conduct would be quite serious."[48] The draft goes on to note that young motorists have high accident rates and that many adolescents have immature judgment and engage in dangerous risk-taking activities on a frequent basis.[49] Criminal law, on the other hand, emphasizes punishment, deterrence, and rehabilitation of the individual criminal defendant, rather than focusing on compensation for the injured victim.[50] This difference in focus could lead to applying a different standard of care in criminal and civil cases.[51]
But the major barrier that we see to applying an adult standard of care to this case is that J.R. was not charged with the reckless use of a firearm. The cases and commentary that the State relies on all refer to factual patterns where the juvenile defendant is engaged in hunting or otherwise directly injures someone through the use of a firearm. But in J.R.'s case, the State's theory of prosecution was that J.R. had incited Ramsey to commit the murders by showing him how to operate the shotgun, by taking numerous steps to encourage him to commit the crime, and by encouraging others not to interfere with Ramsey's plan to commit murder. The State's case rested on the inference that these actions showed that J.R. consciously disregarded a substantial and unjustifiable risk that his conversations with Ramsey would result in Ramsey's shooting people.
We are unaware of any authority to support the claim that J.R. should be held to an adult standard for his actions of showing Ramsey how to use a shotgun and encouraging him to carry out the plan to take the shotgun to school and commit murder. Arguably, under Ardinger, the State's reasoning might apply to instances where a juvenile negligently entrusted a firearm to another person. But here, J.R. was not charged with careless use or careless entrustment of a firearm. If we held that juveniles are to be held to an adult standard of care for conversations that result in another person committing a crime, it appears to us that we would effectuate a broad and major change in the lawjuveniles would frequently be held to an adult standard of care.
It was undisputed that J.R. knew that shooting people with a shotgun was dangerous. The dispute was whether J.R. knew or reasonably should have known that Ramsey would go beyond mere words and would actually proceed to gun people down at the school. To resolve this issue, the jury should have evaluated J.R.'s level of care against the standard of care reasonably expected of a juvenilenot an adult.
We accordingly conclude that Judge Wood erred in instructing the jury that J.R.'s actions should be judged by an adult standard of care rather than charging that J.R.'s conduct should be judged by the standard of a reasonable person of J.R.'s like age, intelligence, and experience under similar circumstances. We also conclude that Judge Wood erred in refusing to allow J.R. to argue to the jury that his actions were not reckless, when judged against the standard of a reasonable person of his age, intelligence, and experience under similar circumstances. We accordingly REVERSE J.R.'s convictions.
The judgment of the superior court is REVERSED.
NOTES
[1] The facts and disposition of Ramsey's case are set out in Ramsey v. State, 56 P.3d 675 (Alaska App.2002).
[2] AS 11.41.110(a)(2).
[3] Neitzel v. State, 655 P.2d 325, 332-33, 336-37 (Alaska App.1982).
[4] See, e.g., Restatement (Second) of Torts § 283A (1965) (applying civil standard); In re S.W.T., 277 N.W.2d 507, 513-14 (Minn.1979) (applying a juvenile standard to criminal charge involving accidental shooting).
[5] 982 P.2d 727 (Alaska 1999).
[6] Id. at 729.
[7] Id. at 730.
[8] Id.
[9] Id.
[10] Id.
[11] Id. at 731 (quoting Restatement (Second) of Torts, supra § 283A).
[12] Id.
[13] Id. (quoting Restatement (Second) of Torts, supra, § 283A cmt. c).
[14] Id. (footnotes omitted).
[15] Id. at 738.
[16] 519 N.W.2d 488 (Minn.App.1994).
[17] Id. at 489-90.
[18] 277 N.W.2d 507 (Minn.1979).
[19] Id. at 509-10.
[20] Id. at 510.
[21] Id. at 513-14.
[22] Id. at 514.
[23] 70 N.J. 442, 360 A.2d 388 (1976).
[24] Id. at 389.
[25] Id. at 391.
[26] Id. at 390.
[27] 192 Ariz. 208, 963 P.2d 287 (Ariz.App.1997).
[28] Id. at 293.
[29] Id.
[30] 508 So.2d 143 (La.App.1987).
[31] Id. at 144.
[32] Id. at 143.
[33] Id. at 144.
[34] Id. at 145.
[35] 39 Wash.App. 180, 692 P.2d 855 (1984).
[36] Id. at 856.
[37] Id.
[38] Id. at 857.
[39] Purtle v. Shelton, 251 Ark. 519, 474 S.W.2d 123, 125-26 (1971); Ortega v. Montoya, 97 N.M. 159, 637 P.2d 841, 842-43 (1981); LaBarge v. Stewart, 84 N.M. 222, 501 P.2d 666, 670 (N.M.App.1972); Thomas v. Inman, 282 Or. 279, 578 P.2d 399, 403 (1978); Prater v. Burns, 525 S.W.2d 846, 851 (Tenn.App.1975); see also W. Page Keeton et. al., Prosser & Keeton on the Law of Torts § 32, at 181 n. 67 (5th ed.1984) (noting that adult-activity exception for automobiles did not apply to activities involving firearms). For earlier cases declining to apply an adult standard of care to juveniles involved with firearms prior to the development of the adult-activity exception outlined in the Restatement (Second) of Torts, see Stephan v. Marlin Firearms Co., 353 F.2d 819, 824-25 (2d Cir.1965) (applying Connecticut law); Chaddock v. Tabor, 115 Mich. 27, 72 N.W. 1093, 1095 (1897); Zamora v. J. Korber & Co., 59 N.M. 33, 278 P.2d 569, 571 (1954); Kuhns v. Brugger, 390 Pa. 331, 135 A.2d 395, 401-02 (1957).
[40] 282 Or. 279, 578 P.2d 399 (1978).
[41] Id. at 401.
[42] Id. at 403.
[43] Id.
[44] Id.
[45] Id.
[46] Restatement (Third) of Torts: General Principles § 8 (Discussion Draft 1999).
[47] Id. § 8 cmt. f.
[48] Id. § 8 cmt. g. See also Purtle, 474 S.W.2d at 125 (recognizing the fact that "a measure of financial responsibility is required" to drive cars in its decision declining to extend an adult standard of care to an accidental shooting by a juvenile while hunting).
[49] Restatement (Third) of Torts: General Principles, supra, § 8 cmt. g.
[50] In re S.W.T., 277 N.W.2d at 514.
[51] Id.