488

Argued and submitted January 14, affirmed March 17, 2004

Terri L. HUDSON-CONNOR,
formerly guardian ad litem for
Sara Hudson, aka Sara Connor,
*Plaintiff,*

*and*

Sara HUDSON,
aka Sara Connor,
*Appellant,*

*v.*

Caroline PUTNEY,
guardian ad litem
for Reilly Burdick, a minor,
*Respondent.*

01-CV-0158-AB; A119317

86 P3d 106

Marianne Dugan argued the cause for appellant. With her on the briefs was Facaros & Dugan.

William E. Flinn argued the cause for respondent. With him on the opening brief were Gary R. Johnson and Hurley, Lynch & Re, P.C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Plaintiff appeals a judgment on a jury verdict for defendant in this action for negligent entrustment of a golf cart. Plaintiff, a 16-year-old girl, was injured when she was struck by a golf cart driven on private property by an 11-year-old boy. Defendant, who was 14 years old at the time, owned the golf cart and had allowed the boy to operate it.[1] The trial court instructed the jury that defendant was subject to the duty of care toward other persons that generally applies to minors. On appeal, plaintiff argues, among other things, that the court erred in giving that instruction because defendant was subject to the more stringent adult standard of care. Plaintiff contends that both the entrustment and operation of a golf cart require adult qualifications and, accordingly, minors who engage in those activities must be held to the adult standard of care. We review for errors of law, *Bennett v. Farmers Ins. Co.*, 150 Or App 63, 72-73, 945 P2d 595 (1997), *rev'd in part on other grounds*, 332 Or 138, 26 P3d 785 (2001), and affirm.

Defendant lived in central Oregon with her grand-parents. In 1998, when she was 12 years old, defendant's grandfather purchased a motorized golf cart and gave it to her. The golf cart's maximum speed was approximately 12 miles per hour. Before making the purchase, defendant's grandfather spent several days teaching her how to drive a golf cart. Defendant was permitted to drive the golf cart around her grandparents' property. Other than to specify the boundaries within which the cart could be used on their property, defendant's grandparents did not restrict its use. Defendant was permitted to allow other children from the neighborhood to drive the cart on the property. However, defendant established her own rules about who could drive the cart and under what conditions. One of her rules was that no person under the age of 12 could drive the cart unaccompanied.

---

[1] Because of their minority, plaintiff and defendant appeared before the trial court through guardians *ad litem*. Plaintiff no longer is a minor and, therefore, she is the actual appellant. For ease of reference, we refer to the actors themselves as plaintiff and defendant.

Plaintiff and defendant were neighbors and friends. On June 15, 2000, they had been driving the golf cart around the property. They were standing near the cart when they were approached by Billy and Bobby, two brothers who also lived in the neighborhood. Bobby, who was 11 years old at the time, asked defendant if he could drive the golf cart. Defendant previously had allowed Bobby to drive the cart, but she had always accompanied him. This time, though, defendant did not want to ride on the cart with Bobby, so she refused his request. Bobby began to beg, and defendant eventually relented. Bobby drove the cart up the driveway, turned around, and drove back toward the other children. As he was approaching them, he attempted to stop the golf cart but stepped on the accelerator pedal instead of the brake. He drove directly into defendant and plaintiff. Plaintiff's left femur was fractured and required surgery to repair.

In an amended complaint, plaintiff alleged that defendant negligently entrusted the golf cart to Bobby. At trial, plaintiff called several witnesses, including her mother. Plaintiff's counsel asked plaintiff's mother as to whether she had asked defendant about the incident. Defendant objected on the ground of relevance, and the trial court sustained the objection. On appeal, plaintiff assigns error to that ruling. However, plaintiff failed to make an offer of proof concerning the witness's anticipated testimony. Without knowing what the substance of her testimony would have been, we are unable to determine whether the trial court's ruling was erroneous or, if erroneous, whether it prejudiced defendant. *See* OEC 103(1) (stating that evidentiary error is not presumed to be prejudicial). We therefore reject that assignment of error without further discussion.

After the parties rested, defendant moved for a directed verdict. She argued that Bobby's age, by itself, was insufficient to permit the jury to find that defendant negligently had entrusted the golf cart to him. The trial court denied the motion.

Before submitting the case to the jury, the trial court discussed the parties' proposed jury instructions with counsel. Defendant requested UCJI 22.04, which provides:

"In considering charges of negligence against a minor, you are instructed that it is the duty of a minor to use the same care that a reasonably prudent person of the same age, intelligence, and experience would use under the same or similar circumstances."

Plaintiff objected to that instruction, arguing that, by permitting other people to operate the golf cart, defendant had engaged in an adult activity and must be held to an adult standard of care. The court gave UCJI 22.04 to the jury despite plaintiff's objection. The jury found that defendant was not negligent and, based on the jury's verdict, the trial court entered judgment in defendant's favor.

■ On appeal, plaintiff argues that the trial court erred in giving UCJI 22.04. Specifically, she contends that all motorized vehicles, including golf carts, are inherently dangerous instrumentalities and that their operation is an adult activity for which it is appropriate to hold minors to an adult standard of care. She also asserts that the adult standard of care should apply when a minor entrusts another person with the operation of a motorized vehicle. In response, defendant contends that minors can be held to an adult standard of care only in the operation of automobiles on roads or premises that are open to the public. Defendant cross-assigns error to the trial court's denial of her motion for a directed verdict.

■ A party is "entitled to have his [or her] theory of the case presented to the jury if there was evidence to support it and the proposed instruction was a correct statement of the law." *State v. Thaxton*, 190 Or App 351, 356, 79 P3d 897 (2003). Thus, here, we consider whether, on this record, the trial court's jury instruction correctly stated the standard of care applicable to defendant's conduct.[2]

_____

[2] Plaintiff did not assign error to the trial court's failure to instruct the jury that defendant was subject to the adult standard of care. However, because that instruction and the instruction that the trial court gave—that defendant was subject to the standard of care for minors—necessarily are mutually exclusive, the question whether the latter is a correct statement of the law necessarily also answers the question whether the former is an incorrect statement. In addition, as discussed below, the same facts are pertinent to each of those inquiries.

■ Generally, in a negligence action, an adult is held to the standard of care that a reasonable adult of ordinary prudence would exercise in the same circumstances. *Woolston v. Wells*, 297 Or 548, 557, 687 P2d 144 (1984).[3] Minors, by contrast, generally are held to the lower standard of care enunciated in UCJI 22.04. *Nielsen v. Brown*, 232 Or 426, 445, 374 P2d 896 (1962). However, the adult standard may apply when a minor engages in an adult activity. *See id.* at 446-51 (discussing operation of automobiles on public highways; citing *Restatement (Second) of Torts* § 283A comment c (1959)).

■ An "adult activity" is one that is "normally undertaken only by adults, and for which adult qualifications are required." *Restatement* at § 283A comment c. If either of those requirements is not met, the *Nielsen* exception does not apply. *See Thomas v. Inman*, 282 Or 279, 286, 578 P2d 399 (1978) (court noted that the *Nielsen* court did not "generally" adopt the exception but merely applied it to the activity at issue in that case, court nevertheless considered whether the exception applied to the handling of firearms; concluding that it did not because that activity did not meet the requirement of being one that is "normally undertaken only by adults").[4] Whether conduct constitutes an "adult activity" is a question of law, determined on a case-by-case basis, depending on the facts in evidence relating to the nature of the activity.

Here, plaintiff focuses her argument exclusively on the adult qualifications requirement. We therefore first consider that requirement. However, as explained below, the evidence in this case did not satisfy either requirement necessary to support the conclusion that defendant engaged in an adult activity.

---

[3] Plaintiff also argues that an adult standard of care is prescribed by statutes that regulate the registration and operation of golf carts, noting that they contain no age distinctions. *See* ORS 810.070; ORS 820.210. However, those statutes govern only golf carts that are operated on public highways. Therefore, we do not further consider plaintiff's statutory argument.

[4] There is some logical tension in the fact that both requirements are necessary and neither, alone, is sufficient to support the conclusion that an activity is an adult activity. Arguably, if an activity requires adult qualifications, it is an adult activity even if minors often engage in it. However, the issue is academic in this case because the evidence did not satisfy either requirement.

The *Nielsen* court did not explain precisely what factors constitute "adult qualifications." Citing the *Restatement* and cases from other jurisdictions, however, the court discussed such factors as skill, knowledge, competence, experience, judgment, and "conscious realization of the probable consequences of [the action]." *Nielsen*, 232 Or at 447. The court also noted that applying the exception to the operation of automobiles on public highways was consistent with public safety considerations implicit in the statutory requirements for that activity, in which no distinction was made between minors and adults. *Id.* at 451; *see also, e.g., Williams v. Esaw*, 214 Kan 658, 668, 522 P2d 950, 958 (1974) ("In the interest of public safety, we believe it imperative that minors be held to the same standards of care in the operation of motor vehicles as are adults."); *Dellwo v. Pearson*, 259 Minn 452, 458, 107 NW2d 859, 863 (1961) ("[In light of] the hazards of automobile traffic, * * * it would be unfair to the public to permit a minor in the operation of a motor vehicle to observe any other standards of care and conduct than those expected of all others."); *Nelson v. Arrowhead Freight Lines*, 99 Utah 129, 134, 104 P2d 225, 228 (1940) ("[A 16-year-old] is presumed to possess that discretion and physical capacity consistent with the safe use of the highways * * *.").

All of the described considerations are sensible, and we agree with them. An activity logically demands adult qualifications if its safe performance requires a level of skill and judgment not typically associated with children. Further, the level of skill and judgment required to perform an activity safely increases in proportion to the danger to persons that the activity poses. Thus, where the risk of harm is low, an activity may be less likely to be treated as an adult activity.

With the foregoing principles in mind, we turn to plaintiff's specific arguments on appeal. We first briefly address plaintiff's contention that the entrustment of a golf cart to another person is inherently an adult activity. According to plaintiff, a minor who entrusts the use of a motorized vehicle to another person should be held to the same standard of care as if he or she actually had operated it. Plaintiff relies on *Ardinger v. Hummell*, 982 P2d 727, 731 (Alaska 1999). In that case, the Alaska Supreme Court held that,

because the entrustment of an automobile requires an exercise of dominion and physical control, entrustment is equivalent to the operation of the vehicle. *Id.* Accordingly, the court concluded that the adult standard of care was applicable to the act of entrustment. *Id.* Plaintiff argues that the "reasoning of the Alaska court is sensible, and a contrary approach would create an unreasonable distinction between a negligent minor driver before and after she hands the wheel over to her minor friend." Plaintiff may well be correct. However, the question remains whether the operation of a golf cart on premises that are not open to the public is, itself, inherently an adult activity. We turn to that issue.

Plaintiff asserts that *all* motorized vehicles are inherently dangerous and therefore require adult qualifications to operate. It follows, plaintiff reasons, that the *Nielsen* exception applies here, and the court erred in giving the challenged instruction. Again, however, whether an activity requires adult qualifications such as adult levels of skill and judgment depends on the nature of the activity. We turn to the evidence on that point.

The parties do not dispute that ORS 801.295 defines "golf cart," in part, as a motor vehicle that is "designed to be and is operated at not more than 15 miles per hour." The evidence showed that the maximum speed of defendant's golf cart was approximately 12 miles per hour. Plaintiff offered no evidence that golf cart accidents commonly occur on premises that are not open to the public or that they often result in fatal or serious injury. Further, there is no evidence in the record, and we may not take judicial notice of the proposition, that having a motor alone makes an instrumentality inherently dangerous. Thus, the evidence does not support plaintiff's contention that operation of a golf cart requires adult qualifications.

Plaintiff protests that, like automobiles,[5] motorized golf carts pose inherent risks of harm to persons if not properly operated. We may take judicial notice of the fact that

---

[5] The Oregon Vehicle Code does not define "automobile." As do the parties, we use the term in its commonly understood sense. *See Webster's Third New Int'l Dictionary* 148 (unabridged ed 1993) (defining "automobile" as "a usu[ally] 4-wheeled automotive vehicle designed for passenger transportation on streets and roadways").

automobile accidents frequently result in fatalities and serious injuries. *See* OEC 201(b)(2); *Nielsen*, 232 Or at 447 (" 'We may take judicial notice of the hazards of automobile traffic, the frequency of accidents, *the often catastrophic results of accidents*, and the fact that immature individuals are no less prone to accidents than adults.' " (quoting *Dellwo*, 259 Minn at 458, 107 NW2d at 863)) (emphasis added). In addition, the evidence permitted the inference that the same rudimentary skills are needed to propel, maneuver, and stop both a golf cart and an automobile with an automatic transmission. However, placing undue emphasis on those similarities understates the significance of the differences between them. For example, there are statutory restrictions on *where* a golf cart may be operated that are not applicable to automobiles. With limited exceptions, golf carts may be driven only on private property.[6] *See* ORS 807.210 (providing exception for disabled persons); ORS 810.070 (providing exception for certain highways adjacent to golf courses). Equally important, in order to operate an automobile on the public highways a driver must master a more demanding set of skills, including understanding the traffic laws and traffic signs and signals, judging road surface conditions, traffic conditions, safe stopping distances, and myriad other safe driving practices. To obtain a license to operate an automobile on the highways, a driver must demonstrate mastery of those skills by passing a knowledge test, a driving skills test, and, if the driver is under the age of 18, a safe driving practices test. ORS 807.065(1)(b); ORS 807.070(2), (3). No such license is required to operate a motorized golf cart on premises that are not open to the public.[7] Significantly, there is no evidence in the record that the operation of golf carts on private premises and automobiles on premises open to the public requires similar driving skills beyond the most rudimentary level. In

---

[6] Plaintiff contends that the place at which an activity is conducted is immaterial to the application of the *Nielsen* exception. We disagree. *See Koos v. Roth*, 293 Or 670, 682, 652 P2d 1255 (1982) ("A danger that is only ordinary in an appropriate location may be abnormal where it exposes others to an extraordinary risk or magnitude of harm, but an extraordinary risk does not become ordinary because it occurs in its own appropriate place.").

[7] ORS 807.010(1) provides that a person "commits the offense of vehicle operating without driving privileges if the person operates a motor vehicle *upon a highway or premises open to the public*" without a license or other grant of privilege. (Emphasis added.)

short, on the factual record before us, we conclude that the operation of a motorized golf cart on private premises does not require adult qualifications.

Finally, even if plaintiff had shown that adult qualifications are required for the operation of a motorized golf cart, there was no evidence that such instrumentalities normally are operated only by adults. *See Thomas*, 282 Or at 286 (holding that, regardless of whether an activity requires adult qualifications, the adult standard of care does not apply to a minor's conduct unless it is "normally undertaken only by adults"). Because operation of a golf cart is not an adult activity, it follows that entrustment of a golf cart to another also is not an adult activity. The trial court did not err in giving UCJI 22.04 to the jury.[8]

Affirmed.

---

[8] Our conclusion obviates the need to address defendant's cross-assignment of error.