575 P.2d 1231

**STATE of Arizona, Appellee,**

v.

**Robert Vincent TUZON, Appellant.**

No. 3438.

Supreme Court of Arizona,
En Banc.

Jan. 9, 1978.
Rehearing Denied March 7, 1978.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III, Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

William J. Friedl, Phoenix, for appellant.

HAYS, Justice.

A jury found appellant Robert Vincent Tuzon guilty of second degree murder and he was sentenced to 20 years to life for this crime. Appellant had previously pleaded guilty to burglary; imposition of sentence on the burglary conviction had been suspended for two and one-half years, and appellant was placed on probation. As a result of the murder conviction, appellant was found to be in violation of his probation, and he was sentenced to serve one to two and one-half years in the Arizona State Prison on the burglary charge. This sentence is to run concurrently with the sentence for murder.

Appellant has timely appealed the judgment and sentence in the murder case and also the probation revocation. The two appeals have been consolidated, and the Supreme Court has jurisdiction pursuant to A.R.S. § 13–1711.

Testimony at trial developed the following facts: Wednesday prior to the Sunday on which the homicide occurred, appellant's wife Irma and their four children moved into the home of Irma's brother, Hector Ortega. Hector lived in Phoenix with his wife and eight children. Irma wished to have no contact with her husband, the appellant, and she asked her brother Hector to keep appellant away from her. Between the time that Irma left him and the homicide, appellant made several attempts to see Irma or to speak to her on the telephone. Hector and his family refused to let appellant see Irma or talk with her. On some of the occasions on which Hector prevented appellant from seeing Irma, there were altercations between the two. In one incident, appellant reportedly sprayed mace in the face of Hector and another relative, and

Hector allegedly hit appellant with a pipe. Appellant sustained some head injuries from the pipe, including a gash which required stitches.

The day before the homicide, appellant picked up his oldest son at a mini-park near Hector's home, kept him overnight, and had the son try several times to contact his mother, Irma. Very early the next day (Sunday), appellant twice prior to the homicide went to Hector's house and tried to gain entrance. He was not permitted to enter.

Appellant then went to the home of his ex-wife's parents and either asked for or was given two guns he had left there. Appellant returned a third time to Hector's. This time he held his son in front of him as he walked from his car toward the house. Appellant had a gun tucked into the waistband of his pants, and Hector came out his door with a gun. There is a conflict in the evidence as to what happened thereafter, but there was testimony to the effect that appellant pushed his son away from him and fired at least four shots. One shot hit the wall near the front door; another grazed Hector's arm and then hit Hector's daughter in the head; and the last two shots were fired at Hector at close range. The last shot hit Hector when he was lying on the floor of his living room seriously wounded. Hector died a few minutes after the last shot.

After threatening Hector's wife and 13-year-old son with the gun, appellant took his wife and two of their children to his car and sped away. A high-speed chase ensued which was ended by a blow-out of a tire on appellant's car. Appellant escaped into the desert but was thereafter captured by the police.

## WAS APPELLANT IMPROPERLY IMPEACHED BY HIS POST-ARREST SILENCE?

When appellant testified at his trial, he claimed that in addition to Hector, two other persons threatened him with guns at the homicide scene. On cross-examination, the prosecutor elicited the fact that appellant had not mentioned the presence of the two other armed men when questioned by officers after his arrest. Appellant contends that, by impeaching him with his failure to tell the police about the two additional persons with guns, the prosecutor violated his right to remain silent after arrest guaranteed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ It is true that in some circumstances, use of post-arrest silence for impeachment has been held to be reversible error. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973); *State v. Shing,* 109 Ariz. 361, 509 P.2d 698 (1973). However, in the present case, appellant did not keep silent after arrest. After being given his *Miranda* warnings, appellant voluntarily answered many questions for the officers. Appellant was not impeached by his silence because he did not keep silent. When one who has voluntarily made statements to police officers after his arrest makes new exculpatory statements at trial, the fact that he failed to make these statements earlier may be used for impeachment. *State v. Raffaele,* 113 Ariz. 259, 550 P.2d 1060 (1976). In *Doyle, supra,* the accused made no post-arrest statement to officers.

## DID THE PROSECUTOR COMMIT REVERSIBLE ERROR IN DEFINING MANSLAUGHTER INCORRECTLY FOR THE JURY?

In his closing argument, the prosecutor told the jury that voluntary manslaughter was an unintentional killing. Defense counsel objected to this misstatement of the law and asked that the incorrect statements be stricken. The court sustained the objection but did not instruct the jury to disregard the statements.

■ A review of Arizona law reveals that whether improper argument of the prosecutor is deemed reversible error must be decided in light of all the relevant facts and circumstances of each case. *See, e. g.,*

*State v. Scott,* 24 Ariz.App. 203, 537 P.2d 40 (1975); *State v. King,* 110 Ariz. 36, 514 P.2d 1032 (1973); *State v. Dowthard,* 92 Ariz. 44, 373 P.2d 357 (1962). Error is held to be reversible error when, from the facts and circumstances of the case, it appears probable that without the error a different verdict would have been returned. *See State v. Scott, supra; State v. King, supra* ; and *State v. Dowthard, supra.*

■ Although the prosecutor did state the law of voluntary manslaughter incorrectly, the jury heard the defense object to these statements, and they heard the judge sustain the objection. The judge told the jury that he would define the law for them. In final argument the prosecutor told the jury to ignore his definition of voluntary manslaughter. In addition, the court properly instructed the jury on the law of manslaughter. From these facts in the record it is clear that the jury knew that a mistake had been made, and that they knew what was the correct law to follow in reaching their verdict. In light of the foregoing, there was no reversible error.

SHOULD THE DEFENDANT HAVE BEEN ALLOWED TO CALL AS A WITNESS A COUNTY ATTORNEY WHO INVESTIGATED THE CRIME?

During the early stages of this case, Michael Donovan of the Maricopa County Attorney's office, went to the victim's home to talk with the widow and other members of the victim's family. Donovan brought with him his wife and a relative of the victim, Bertha Ortega. Donovan apparently does not speak Spanish, but his wife and Ms. Ortega are both fluent in Spanish, and they interpreted for him. The widow spoke only Spanish and had little understanding of English. At this time Donovan viewed the door of the victim's home through which one or more bullets had passed at the time of the homicide. This door was later removed and many bullets were fired into it as part of the testing done in preparation of the case. Donovan also spoke with the victim's widow through a third interpreter on one other occasion.

■ The defense sought to call Donovan as a witness claiming that he could give valuable testimony regarding the appearance of the door before it was changed by testing and regarding prior inconsistent statements by the widow. The defense also alleged that the victim's widow and family changed their testimony as a result of their discussions with Donovan and that their altered testimony reflected Donovan's theory of how the homicide occurred.

The trial court granted the state's motion for a protective order prohibiting the defense from calling Donovan as a witness. The court found that Donovan did not attempt to alter the testimony of witnesses to fit his theory of the case. This finding was supported by the record.

■ We hold that the trial court correctly granted the protective order. Although Donovan was not the prosecutor trying the case, we believe that the law governing when the defense may call the prosecutor to testify also applies to other attorneys within the prosecutor's office. It is within the discretion of the trial court to decide whether a defendant may require a prosecuting attorney to testify in his behalf. *State v. Howard,* 27 Ariz.App. 339, 554 P.2d 1282 (1976). Calling a prosecutor as a witness for the defendant inevitably confuses the distinctions between advocate and witness, argument and testimony, and should be permitted only if required by a compelling need. *United States v. Schwartzbaum,* 527 F.2d 249 (2nd Cir. 1975). *See also* Annot., 54 A.L.R.3d 100 (1973).

In this case no compelling need for Donovan's testimony was shown. Other witnesses were available to testify as to the condition of the door.

With regard to appellant's desire to have Donovan give evidence of the widow's prior inconsistent statements, the record reveals that the widow was impeached numerous times by the defense in cross-examination which lasted for nearly four days; almost all of this impeachment consisted of prior inconsistent statements. Any additional impeachment through Donovan's testimony would have been merely cumulative.

## DID THE TRIAL COURT ERR BY FAILING TO INSTRUCT THE JURY ON INVOLUNTARY MANSLAUGHTER?

Appellant contends that one possible interpretation of the evidence supports a verdict of involuntary manslaughter and that, therefore, it was reversible error for the trial court not to give a jury instruction on involuntary manslaughter. Appellant points out that there was testimony that a shot or something that sounded like a shot was heard before he started shooting. Therefore, appellant postulates that if the jury found that he had a reasonable belief that the victim was shooting at him, he would be acting in self-defense, but if the jury found that, although he may have heard something sounding like a shot, it wasn't reasonable to believe the victim was shooting at him, he committed a negligent homicide.

Appellant's argument assumes that an unreasonable, though honest, belief, in the necessity for use of force in self-defense reduces the crime to a lower degree. This is not correct. A plea of self-defense under A.R.S. § 13–462 only seeks to justify a homicide. If the jury had found that it was unreasonable for the appellant to believe that the victim was shooting at him, then the homicide simply was not justified. The standard is a reasonable person's belief, not the unreasonable, even if honest, belief of the accused. *State v. Anderson,* 102 Ariz. 295, 428 P.2d 672 (1967). Therefore, the trial court committed no error in not giving a jury instruction on involuntary manslaughter.

## WAS APPELLANT IMPROPERLY IMPEACHED BY A PRIOR CONVICTION OF A CRIME WHICH WAS NOT A FELONY?

Appellant had previously pleaded guilty to attempted burglary, second degree, open end. Imposition of sentence was suspended, and appellant was placed on probation for two and one-half years. As a condition of probation, appellant was required to spend four weekends in the county jail. When appellant testified at his trial, he was impeached with this conviction.

It is contended that it was error to permit this impeachment because only felony convictions may be used for impeachment. *State v. Reyes,* 99 Ariz. 257, 408 P.2d 400 (1965).

A.R.S. § 13–103(B) provides that an open-end offense "shall be deemed a misdemeanor for all purposes after a sentence imposing a punishment other than imprisonment in the state prison." In appellant's case, the court did not impose a sentence of any kind; rather the court suspended imposition of sentence for two and one-half years.

The question of how to treat an open-end offense in cases where imposition of sentence is suspended and the defendant placed on probation was answered by this court in a recent case of *State v. Risher,* 117 Ariz. 587, 574 P.2d 453. There we said that an open-end offense shall be deemed a felony unless and until otherwise designated. In our instant case no designation had been made so the impeachment was proper.

We have reviewed the record on appeal and find no reversible error. The judgment of conviction, the probation revocation, and the sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and GORDON, J., concur.

HOLOHAN, Justice, specially concurring.

This case is another example of the mischief created by this court's decision in *State v. Risher, supra.* For the reasons stated in my dissent in *Risher* I concur in the result in this case. The suspension of sentence for a period of two and one-half years was in fact a designation of the offense as a felony.

## SUPPLEMENTAL OPINION

HAYS, Justice.

Appellant in his motion for rehearing has addressed one issue raised in the opinion which needs clarification. In the opinion we stated: "Appellant was not impeached

by his silence because he did not keep silent." We there cited *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

In *Doyle, supra,* the defendant at the time of arrest did not remain completely silent in that he said at the time of arrest:

"Q. [By defense counsel.] And you were placed under arrest at that time?

"A. [By Doyle.] Yes. I asked what for and he said—'For the sale of marijuana.' I told him,—I didn't know what he was talking about." 96 S.Ct. at 2246 n. 4.

In contrast with *Doyle, supra,* the appellant in this case engaged in an extensive discussion of the details of his version of the events. The defendant in *Doyle* did not waive his Miranda rights as his limited words comported with the idea of silence. This is not true of the appellant here.

Motion for rehearing denied.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.