IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2002-0386 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| DEREK SCOTT OAKS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20021095

Honorable Deborah Bernini, Judge

AFFIRMED IN PART; VACATED IN PART AND REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Joseph L. Parkhurst                    Tucson
                                                      Attorneys for Appellee


Isabel G. Garcia, Pima County Legal Defender
  By Stephan J. McCaffery                                       Tucson
                                                      Attorneys for Appellant

H O W A R D, Presiding Judge.

**¶1**        A jury found appellant Derek Oaks guilty of aggravated assault with a deadly

weapon and aggravated assault causing serious physical injury, both dangerous nature

offenses. The trial court sentenced Oaks to partially aggravated, concurrent, ten-year terms of imprisonment. He contends on appeal that the court erred by refusing to give his requested jury instruction on recklessness and by relying on improper factors to aggravate his sentences. In a supplemental brief, Oaks asserts he was entitled to have a jury determine the existence of aggravating factors based on *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). We affirm Oaks's convictions but remand the case for resentencing.

### Factual and Procedural Background

¶2        We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions. *See State v. Riley*, 196 Ariz. 40, ¶ 2, 992 P.2d 1135, 1137 (App. 1999). On March 28, 2002, fifteen-year-old Oaks, his fifteen-year-old friend Q., and two other boys were in Oaks's home after they had been swimming. While Q. was in Oaks's bedroom playing games on the computer, Oaks went to his father's bedroom closet and retrieved an old, rusty, .22 caliber rifle. The gun was unloaded. Oaks took it to his bedroom and pointed it at Q. At some point, the two pretended to sword fight, with Oaks swinging the rifle by the butt and Q. waving a monkey wrench. Q. then went back to the computer.

¶3        Oaks later returned to his father's closet, put a bullet in the rifle's chamber, and walked into the bedroom where Q. was. Q. turned around and asserted the gun was unloaded. Oaks said something like, "[W]hat do you think about this now?" pointed the

rifle at Q., and "barely touched" the trigger. The rifle fired, and the bullet hit Q. in the head. Q. underwent emergency surgery, was in intensive care and a rehabilitation facility for months, and sustained what a neurosurgeon testified is permanent brain damage.

¶4 Oaks told a deputy sheriff who responded to a 911 call that, after Oaks had loaded the rifle, he had pulled the trigger a few times while in the closet to make sure the gun would not fire. Oaks reported he had then taken the rifle to his bedroom and told Q. he was going to shoot him. Oaks later told a detective Q.'s saying he did not believe Oaks would shoot him had "bugged" Oaks so he had pointed the rifle at Q. Oaks said he had not intended to shoot Q.

¶5 Oaks was indicted for attempted first-degree murder and two counts of aggravated assault. The state dismissed the attempted murder charge on the day trial began, and Oaks was tried on and convicted of the aggravated assault charges.

### Recklessness Instruction

¶6 Pursuant to A.R.S. § 13-1203(A)(1) and (2), the trial court instructed the jury, both in preliminary and final instructions, that a person commits assault by "intentionally, knowingly or recklessly caus[ing] a physical injury to another person." Although the court also instructed the jury at the state's request that a person can commit an assault by intentionally placing another person in reasonable apprehension of imminent physical injury, the state's primary theory was that Oaks had recklessly assaulted Q. At the start of trial,

3

Oaks asked the court to give the following preliminary instruction defining the standard of conduct for recklessness as that of a reasonable fifteen-year-old person:

> "Recklessly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person of age 15 would observe in the situation.

The trial court refused the request.

¶7        When the court and the parties discussed jury instructions at the close of evidence, Oaks objected to the court's decision to instruct the jury with language drawn from A.R.S. § 13-105(9)(c), which defines the standard of conduct of a reasonable person, not a reasonable fifteen year old. The court instructed the jury as follows:

> Recklessly means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

¶8        Oaks contends the court erred in refusing to give his requested instruction, citing civil negligence cases and juvenile delinquency cases. He argues that a majority of courts determining the proper standard of conduct for recklessness in similar cases have applied a juvenile standard and have not distinguished between adult and juvenile proceedings in doing so. In addition, Oaks contends a juvenile's age, intelligence, maturity,

4

and education are considered in other aspects of criminal prosecutions, such as in determining whether a juvenile may be sentenced to death or whether a juvenile's confession was voluntary.

¶9         Preliminarily, we reject the state's contention that the instruction's language "reasonable person would observe in the situation" allowed the jury to determine Oaks's guilt based on a recklessness standard for a reasonable fifteen-year-old juvenile in Oaks's situation. Both the statutory definition and the court's instruction contain the term "reasonable person." By its very nature, the term connotes an objective standard of conduct, not a subjective standard. *See State v. Serrano*, 145 Ariz. 498, 501, 702 P.2d 1343, 1346 (App. 1985) (reasonable person standard of conduct "is objectively based"). This standard does not take into account the individual characteristics of the accused. *See State v. Tuzon*, 118 Ariz. 205, 209, 575 P.2d 1231, 1235 (1978) (standard in determining self-defense is "a reasonable person's belief, not the unreasonable, even if honest, belief of the accused"). We therefore determine whether giving the instruction holding Oaks to an objective, adult standard of conduct was error.

¶10        The legislature has authority to define crimes and fix penalties. *State v. Casey,* 205 Ariz. 359, ¶ 10, 71 P.3d 351, 354 (2003). Our decision must implement the legislature's intent in defining the state of mind at issue. *See In re William G.*, 192 Ariz. 208, 212, 963 P.2d 287, 291 (App. 1997). We review this issue of statutory construction de novo. *See State v. Vogel*, 207 Ariz. 280, ¶ 25, 85 P.3d 497, 501 (App. 2004). Our

primary goal in construing a statute is to determine and give effect to the legislature's intent. *Id.* "Statutory language is the best indicator of that intent and we will give terms 'their ordinary meanings, unless the legislature has provided a specific definition or the context of the statute indicates a term carries a special meaning.'" *Kessen v. Stewart*, 195 Ariz. 488, ¶ 6, 990 P.2d 689, 691-92 (App. 1999), *quoting Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App. 1995).

**¶11**　　　　Arizona voters passed Proposition 102 in 1996, amending the Arizona Constitution to grant the legislature, or the people by initiative or referendum, authority to enact procedural and substantive laws governing all proceedings affecting juveniles who engage in unlawful acts.  Ariz. Const. art. IV, pt. 2, § 22.  The amendment provides in part:

> In order to preserve and protect the right of the people to justice and public safety, and to ensure fairness and accountability when juveniles engage in unlawful conduct . . . :
>
> 1. Juveniles 15 years of age or older accused of murder, forcible sexual assault, armed robbery or other violent felony offenses as defined by statute shall be prosecuted as adults.

*Id.*  The amendment further requires that any older juvenile convicted of a violent crime be "subject to the same laws as adults, except as specifically provided" otherwise.  *Id.*

**¶12**　　　　To implement the amendment, the legislature enacted, inter alia, A.R.S. § 13-501, which provides in part: "The county attorney shall bring a criminal prosecution against a juvenile *in the same manner as an adult* if the juvenile is fifteen . . . and is accused of any . . . violent felony offense."  § 13-501(A)(5) (emphasis added).  A violent offense "includes

6

any criminal act that results in death or physical injury or any criminal use of a deadly weapon or dangerous instrument." A.R.S. § 13-604.04(B).

¶13 "The stated intent of Proposition 102 was to make possible more effective and more severe responses to juvenile crime." *State v. Davolt*, 207 Ariz. 191, ¶ 100, 84 P.3d 456, 479 (2004). The effect of the constitutional amendment and legislation was to subject older juvenile offenders accused of violent crimes to the adult criminal system, unless specifically excepted. Applying the objective standard for recklessness to older juveniles tried as adults thus furthers the voters' and the legislature's intent and is consistent with the other provisions requiring such juveniles to be treated as adults.

¶14 Furthermore, adopting a juvenile standard for recklessness would create a statutory anomaly. No such juvenile standard exists for crimes committed intentionally or knowingly, even if the crime is first-degree murder. And no court has suggested that a juvenile standard exists for the premeditation element of first-degree murder. Nor do we find it relevant, as Oaks argues, that the mental states of recklessness and criminal negligence refer to standards of conduct while intentionally and knowingly do not. Each is a criminal mental state under § 13-105(9); the legislature did not distinguish among them. We thus see no indication the legislature intended that crimes committed recklessly be subject to a different standard than crimes committed intentionally, knowingly, with criminal negligence, or with premeditation.

¶15        Relying on *In re William G.*, 192 Ariz. 208, 963 P.2d 287 (App. 1997), which adopted a juvenile recklessness standard, Oaks argues the purpose of the constitutional amendment was to alter the punishment for certain juvenile offenders, not to change the definition of an offender.  But the language of the amendment belies that claim.  As noted above, the amendment expressly states that juveniles over fifteen who are accused of committing certain offenses or who are chronic felony offenders "shall be prosecuted as adults."  Ariz. Const. art. IV,  pt. 2, § 22.  That language thus specifically addresses who constitutes an offender under the amendment; subsequent language addresses punishment of juvenile offenders prosecuted and convicted as adults.  *Id.*  And, the court in *William G.* specifically excepted from the scope of its decision inherently dangerous conduct such as that involved here.  192 Ariz. at 214, 963 P.2d at 293.

¶16        Moreover, Oaks's reliance on civil negligence cases is misplaced.  In *William G.*, Division One of this court found it "evident . . . that the legislature did not intend via section 13-105(9)(c) to criminalize acts or omissions amounting to no more than civil negligence."  192 Ariz. at 212, 963 P.2d at 291.  The court also noted that "[c]riminal negligence as statutorily defined in Arizona does not equate to civil negligence."  *Id.* at 213 n.1, 963 P.2d at 292 n.1.  And, because we analyze this as an issue of voter and legislative intent, we are not at liberty to adopt Oaks's arguments based on civil negligence standards and public policy.  *See Stephan v. Marlin Firearms Co.*, 353 F.2d 819 (2d Cir. 1965); *Faith v. Massengill*, 121 S.E.2d 657 (Ga. Ct. App. 1961), *overruled in part on other*

8

*grounds by Brady v. Lewless*, 186 S.E.2d 310 (Ga. Ct. App. 1971); *Farm Bureau Ins. Group v. Phillips*, 323 N.W.2d 477 (Mich. Ct. App. 1982); *LaBarge v. Stewart*, 501 P.2d 666 (N.M. Ct. App. 1972); *Thomas v. Inman*, 578 P.2d 399 (Or. 1978); *Robinson v. Lindsay*, 598 P.2d 392 (Wash. 1979).

¶17      In addition, although the court concluded in *William G.* that a juvenile accused of criminal damage must be judged by the standard of "fifteen year olds of like age, intelligence and experience," it did so in the context of a juvenile delinquency proceeding involving a nonviolent crime. 192 Ariz. at 214, 963 P.2d at 293. Like *William G.*, the out-of-state cases on which Oaks relies involved juvenile delinquency proceedings. *J.R. v. State*, 62 P.3d 114 (Alaska Ct. App. 2003); *State in re Malter*, 508 So. 2d 143 (La. Ct. App. 1987); *In re S.W.T.*, 277 N.W.2d 507 (Minn. 1979); *State v. Marshall*, 692 P.2d 855 (Wash. Ct. App. 1984). Thus, Oaks's argument that the purpose of juvenile delinquency proceedings is to rehabilitate offenders does not apply to his prosecution as an adult in light of the express language in the constitutional amendment and § 13-501 requiring that prosecution. And the failure of the courts in the cases Oaks cited to distinguish between an adult standard of conduct and a juvenile standard of conduct is not significant, despite his assertion to the contrary. Because the cases involved juveniles adjudicated delinquent as juveniles, the courts had no need to discuss the standards applicable to adults or to juveniles tried as adults.

9

**¶18** We thus hold that a juvenile fifteen years or older required to be charged as an adult with a violent offense under § 13-501 and with having committed the offense recklessly is held to the standard of a reasonable person, not a reasonable juvenile of the same age as the juvenile charged.

### Aggravated Sentences

**¶19** Oaks also contends the trial court erred in imposing partially aggravated sentences, arguing the court erroneously believed it was required to consider the likelihood of his rehabilitation and recidivism, improperly used elements of the crimes as aggravating factors, relied on factors not supported by the information before it, and failed to state the reasons for its findings. He asserts the errors require that he be resentenced.

**¶20** In imposing the sentences, the trial court found as aggravating factors the catastrophic physical and emotional damage to the victim and his family; the unlikelihood Oaks could be rehabilitated in only a short time in prison; his deliberately choosing not to take advantage of rehabilitation services the juvenile court had offered him; the cruel manner in which he had committed the offenses as evidenced by his having wanted to bully and scare Q.; Q.'s young age; Oaks's having pulled the trigger as evidence that the shooting had not simply been an accident; and Oaks's posing "an unbelievable danger" to the community because of his willingness to threaten and hurt people. The court found as mitigating factors Oaks's age and his remorse.

10

**¶21** In a supplemental brief filed after the case was submitted, Oaks argues that he is entitled to have a jury determine the existence of aggravating factors pursuant to *Blakely*. The state contends Oaks has waived the issue by failing to raise it either in the trial court or in his opening brief. Oaks concedes he did not raise the issue before, but argues the error is fundamental. We agree and thus address the issue. *See State v. Resendis-Felix*, ___ Ariz. ___, ¶ 5, 100 P.3d 457, 459 (App. 2004), *supp. op.*, No. 2 CA-CR 2003-0114-PR (Ct. App. Dec. 9, 2004).

**¶22** In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435, 455 (2000), the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely*, the Court expounded on the holding of *Apprendi*, stating that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." ___ U.S. at ___, 124 S. Ct. at 2537.

**¶23** Under our supreme court's holding in *State v. Ring*, 204 Ariz. 534, ¶ 43, 65 P.3d 915, 933 (2003), *Apprendi* error may be harmless. Both divisions of this court have reached the same conclusion on *Blakely* error. *Resendis-Felix*, ___ Ariz. ___, ¶ 8, 100 P.3d at 460; *see also State v. Henderson*, ___ Ariz. ___, ¶¶ 22, 33, 100 P.3d 911, 917, 921-22 (App. 2004); *State v. Martinez*, ___ Ariz. ___, ¶ 21, 100 P.3d 30, 35 (App. 2004); *State*

11

*v. Miranda-Cabrera*, ___ Ariz. ___, ¶ 30, 99 P.3d 35, 42 (App. 2004). We are unable to conclude the error here is harmless. Oaks did not admit any of the aggravating factors the court found, and none of them is inherent in the jury's verdicts that he had committed aggravated assault with a deadly weapon and aggravated assault causing serious physical injury.[1] Many of the factors are also subjective, and we are unable to conclude beyond a reasonable doubt that the jury would have found them to be aggravating factors. Accordingly, we affirm Oaks's convictions, vacate his sentences, and remand the case for resentencing pursuant to *Blakely.*

 

 

_____

JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

 

 

_____

J. WILLIAM BRAMMER, JR., Judge

 

E C K E R S T R O M, Judge, specially concurring.

---

[1]The state asserted at oral argument that Q.'s young age was a factor inherent in the jury's verdict because it was undisputed at trial and that, under Division One's decision in *State v. Martinez*, ___ Ariz. ___, 100 P.3d 30 (App. 2004), the trial court was thus entitled to find any additional aggravating factors and impose aggravated sentences. Because the state did not raise this issue until oral argument, however, we do not address it. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977).

¶24    I concur in the majority's result on both issues in this case but disagree with the majority's application of the harmless error doctrine to the *Blakely* error for the reasons stated in my special concurrence in *State v. Resendis-Felix*, ___ Ariz. ___, ¶¶ 12-25, 100 P.3d at 461-64.


_____
PETER J. ECKERSTROM, Judge