JONES, Judge:
¶ 1 Susan Jacobson appeals her conviction and sentence for first-degree murder. Jacobson argues the trial court erred when it precluded two experts from testifying she suffered from post-traumatic stress disorder (PTSD) and a "cold" expert from testifying about the general hormonal effects of pregnancy. We hold the PTSD diagnoses and "cold" expert testimony were properly excluded and affirm the trial court's decisions.
FACTS[2] AND PROCEDURAL HISTORY
¶ 2 Late in the night of February 25, 2015, Jacobson fatally shot her live-in boyfriend, Marvin J., in the head while he was lying in bed. Jacobson then tried to clean up the scene, wrapped Marvin's body in a tarp, and moved it to a nearby window. Jacobson disposed of the bloody bed sheets and buried the gun before reporting the shooting to the police two days later. At the time, Jacobson was nine months' pregnant with Marvin's child.
¶ 3 When a deputy sheriff later interviewed Jacobson, she claimed she killed Marvin in self-defense. Jacobson said Marvin had been angry with her for a few days and, on the night of the shooting, he woke her up by kicking her in the stomach. Jacobson said Marvin yelled he was "sick of [her]," and did not want the baby. Jacobson said she left the bed, grabbed the gun, and shot Marvin believing "whoever [got] to the gun first [was] going to be saved."[3] Jacobson said Marvin had kicked her in the stomach during her prior pregnancy as well.
¶ 4 The State charged Jacobson with one count of first-degree murder and three counts of tampering with physical evidence. A few days after her arrest, Jacobson gave birth to her second child. The children were then taken into State custody and the State sought to sever her parental rights. A psychiatrist, Dr. Chris Linskey, and a psychologist, Dr. Patricia Rose, evaluated Jacobson for purposes of the severance hearing and diagnosed her with PTSD. Both doctors then testified at the severance hearing and made clear that their opinions, consistent with the severance proceedings, related solely to Jacobson's ability to parent the two children. Throughout that process, and upon advice of counsel, Jacobson did not answer questions related to the shooting, and the doctors said they intentionally avoided discussing the events surrounding the shooting when evaluating Jacobson.
¶ 5 Before trial, the court granted the State's motion to preclude testimony about Jacobson's PTSD diagnoses. The trial court also granted the State's motion to preclude testimony about the general hormonal effects associated with third-trimester pregnancies that Jacobson sought to introduce through a *963 "cold" expert.[4] Jacobson was subsequently convicted on all counts, and sentenced to life in prison. Jacobson timely appealed,[5] and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1),[6] 13-4031, and -4033(A).
DISCUSSION
I. PTSD Diagnoses
¶ 6 Jacobson argues the trial court erred when it precluded testimony regarding her post-arrest PTSD diagnoses. At issue is: (1) whether the PTSD diagnoses were admissible to show past acts of domestic abuse, and (2) whether the PTSD diagnoses may be used to address the mens rea element of first-degree murder. We review a trial court's ruling on the admissibility of expert opinions for an abuse of discretion. State v. Chappell , 225 Ariz. 229, 235, ¶ 16, 236 P.3d 1176, 1182 (2010) (citing State v. Chapple , 135 Ariz. 281, 297, 660 P.2d 1208, 1224 (1983) ). We review constitutional and legal issues de novo . State v. Ellison , 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006) (citing Lilly v. Virginia , 527 U.S. 116, 137, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) ).
¶ 7 As a preliminary matter, Jacobson argued before the trial court that State v. Vogel , 207 Ariz. 280, 85 P.3d 497 (App. 2004), supports admission of the PTSD diagnoses, and on appeal again directs the Court's attention to the factual recitation in Vogel . There, a psychiatrist diagnosed a defendant with PTSD and testified he believed the defendant was a victim of domestic violence. Id. at 282, ¶ 15, 85 P.3d at 499. However, the propriety of the admission of the PTSD diagnosis was never questioned or addressed by the Court of Appeals. Thus, Vogel does not support the introduction of a PTSD diagnosis as proof of prior acts of domestic violence.
A. Inadmissibility of PTSD Diagnoses as Proof of Prior Acts of Domestic Violence
¶ 8 Typically, juries consider a self-defense claim from the perspective of a reasonable person, see A.R.S. §§ 13-404(A), -405(A), but by statute, a self-defense claim by a victim of domestic violence is considered from the modified perspective of "a reasonable person who has been a victim of those past acts of domestic violence," A.R.S. § 13-415. To apply this modified reasonable person standard, the jury must first determine whether the victim perpetrated past acts of domestic violence against the defendant, and, if so, then determine whether a reasonable person who had been subjected to those past acts of domestic violence would have used physical force in self-defense.[7]
¶ 9 Toward that end, a defendant may present evidence of the victim's past acts of domestic violence against the defendant to illustrate the application of A.R.S. § 13-415. She may also introduce a "cold" expert to explain the general characteristics and behavioral traits of people who have been abused in such a manner to assist the jury in understanding the modified standard.
¶ 10 Here, we consider whether a PTSD diagnosis may be used to prove that past acts of domestic violence occurred, such that the modified standard in A.R.S. § 13-415 would apply. Although no Arizona court has directly addressed this issue, another panel of this Court recently addressed the admissibility of *964 a PTSD diagnosis in State v. Richter , 243 Ariz. 131, 402 P.3d 1016 (App. 2017).[8] There, the defendant sought to introduce expert testimony that she suffered from PTSD to support her claim she kidnapped and abused her children while under duress. Id. at 134-35, ¶¶ 7-8, 402 P.3d at 1019-20. The trial court precluded the PTSD testimony, evidence of prior acts of domestic violence, and the duress defense. Id. at ¶¶ 6, 9-10, 402 P.3d at 1019-20. The defendant was subsequently convicted. Id. at 134, ¶ 5, 402 P.3d at 1019. On appeal, the Richter court vacated the conviction, holding the PTSD testimony was not inadmissible diminished-capacity evidence, but was, instead, admissible in support of a duress defense. Id. at 140, ¶ 32, 402 P.3d at 1025.
¶ 11 Richter does not elaborate under which circumstances a PTSD diagnosis might be admissible in support of a justification defense. See id. at 137, ¶ 19, 402 P.3d at 1022 ("Thus, even assuming some of [the PTSD] testimony could have been construed as diminished-capacity evidence, which would be inadmissible ... it was nevertheless admissible to show that she committed the charged offenses under duress.") (citing State v. Mott , 187 Ariz. 536, 541, 931 P.2d 1046, 1051 (1997) ; A.R.S. § 13-412(A) ; and Ariz. R. Evid. 401 ). We do not interpret Richter to mean that a PTSD diagnosis is always admissible as part of a justification defense.
¶ 12 A PTSD diagnosis is not admissible to support a justification defense where it is not relevant, sufficiently probative, or a proper use of expert testimony. See Ariz. R. Evid. 402 (providing for the admission of relevant evidence unless prohibited by constitution, statute, or rule), 403 (permitting the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury"), 702 (permitting experts to testify if it "will help the trier of fact to understand the evidence or to determine a fact in issue"). It has been long established that expert witnesses may not testify as to the credibility of another witness or defendant. See State v. Lindsey , 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986) ("[W]e explicitly state at this time that trial courts should not admit direct expert testimony that quantifies the probabilities of the credibility of another witness.") (citing State v. Buell , 22 Ohio St.3d 124, 489 N.E.2d 795, 804 (1986) ); State v. Moran , 151 Ariz. 378, 385-86, 728 P.2d 248, 255-56 (1986) (collecting cases). In this case, the PTSD diagnoses only served to vouch for Jacobson's credibility and should thus be excluded.
¶ 13 As previously addressed, Drs. Rose and Linskey evaluated Jacobson solely for issues attendant to a severance case initiated following her arrest. Dr. Rose's evaluation of Jacobson was conducted over two days and was based primarily upon Jacobson's own statements that she was a victim of domestic violence. Parts of Dr. Rose's evaluation were self-administered, meaning Jacobson sat alone to answer the questions and had significant time to contemplate her answers before returning the questionnaire to Dr. Rose. Dr. Rose did not consider any physical evidence or third-party statements regarding Jacobson's otherwise unsubstantiated claims of having suffered domestic abuse. Based upon this information, Dr. Rose concluded in her report:
[Jacobson] experiences PTSD, panic disorder, and an unspecified depressive disorder. Additionally, she has been the victim of psychological and physical spousal abuse, and has been exposed to extreme marital distress.
¶ 14 Dr. Linskey's evaluation lasted approximately an hour and a half, and his determinations were based solely upon Jacobson's own statements to him and the information contained within Dr. Rose's report. Limited to the identical information obtained and evaluated by Dr. Rose, Dr. Linskey diagnosed Jacobson with PTSD. As the State notes, both doctors took Jacobson at her word when she alleged to have been subjected to abuse from Marvin.
*965 At the severance hearing, Dr. Linskey testified Jacobson "seemed to be honest in her answers" and seemed "sincere." Dr. Rose testified Jacobson was "cooperative," took the evaluation "seriously," was "forthcoming," and "wanted to answer the questions accurately."
¶ 15 No Arizona case law discusses the admissibility of a diagnosis based solely upon a defendant's statements. However, we find the analysis in State v. Lupoli , 348 Or. 346, 234 P.3d 117 (2010), to be highly persuasive. In Lupoli , the state sought to introduce an expert's diagnosis that a child was the victim of sexual abuse. Id. at 123-24. The expert reviewed no physical evidence and relied solely upon the child's statements to the expert. Id. at 124-25. The Oregon Supreme Court held the diagnosis inadmissible because it was solely based upon the expert's "assessment of the child's believability." Id. at 125. The court recognized that portions of the expert's testimony may have been admissible, but because those portions were "inextricably bound up with portions that constituted clear 'vouching,' " the entire diagnosis was inadmissible. Id.
¶ 16 In this case, both doctors based their PTSD diagnoses solely upon Jacobson's post-arrest statements. The doctors did not consider any physical evidence of, or conflicting evidence regarding, abuse by the victim; nor did they interview any other witnesses. Accordingly, we find the PTSD diagnoses in this case inherently vouch for Jacobson's credibility. As such, their admission would allow expert testimony to usurp the jury's role as factfinder. Jacobson's PTSD diagnoses are therefore inadmissible as evidence of past acts of domestic abuse having been perpetrated against Jacobson by Marvin.
¶ 17 Not only did the doctors rely solely upon Jacobson's statements, but Jacobson omitted key information in providing those statements relevant to the eventual PTSD diagnoses. An expert's testimony is not admissible if the testimony is based upon insufficient facts or data. See Ariz. R. Evid. 702(b). During interviews with detectives, Jacobson reported having been sexually assaulted by her mother's boyfriend. When Jacobson reported the assaults to her mother, her mother did not believe her. Jacobson did not disclose anything having to do with this information to Drs. Rose and Linskey throughout the course of their evaluations, even when specifically asked to disclose any prior traumatic events. Thereafter, at the pretrial hearing, the State asked Dr. Linskey whether a PTSD diagnosis was necessarily associated with abuse stemming from a single relationship. Dr. Linskey, testified that unresolved prior traumatic events, such as sexual assault , could also cause PTSD. Given Dr. Linskey's testimony, and Jacobson's significant omission of clearly relevant traumatic history during the doctors' evaluations, the PTSD diagnoses were based upon insufficient facts or data to specifically attribute any PTSD Jacobson might suffer to the asserted abuse from Marvin. Accordingly, we find the trial court did not abuse its discretion when it precluded the PTSD diagnoses.
B. Inadmissibility of PTSD Diagnoses as Evidence of a Character Trait
¶ 18 Jacobson argues that even if the diagnoses were not admissible to prove prior acts of domestic violence, they were still admissible to illustrate she did not premeditate killing Marvin because the chronic anxiety and hypervigilance "inherent in [her] PTSD diagnosis" show a character trait for impulsivity. See State v. Buot , 232 Ariz. 432, 434, ¶ 9, 306 P.3d 89, 91 (App. 2013) (explaining "a character trait of impulsivity" may cause a defendant "to act reflexively rather than upon reflection"). Although a defendant cannot present diminished-capacity evidence to negate the mens rea element of the offense, see Mott , 187 Ariz. at 541, 931 P.2d at 1051, a defendant may present "observational evidence" about the defendant's "tendency to think in a certain way and his behavior characteristics," Clark v. Arizona , 548 U.S. 735, 757, 760, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006) (interpreting Mott ); see also State v. Christensen , 129 Ariz. 32, 35, 628 P.2d 580, 583 (1981) (concluding expert testimony that a defendant possessed a character trait for impulsivity would assist the jury in determining whether the defendant acted with premeditation). However, "a tendency to act impulsively in no way precludes a finding of *966 legal premeditation." State v. Wood , 180 Ariz. 53, 64, 881 P.2d 1158, 1169 (1994).
¶ 19 Contrary to her own proffered evidence, Jacobson equates chronic anxiety and hypervigilance with a character trait for impulsivity. But, as Dr. Rose testified in the pretrial hearing, persons who are "hypervigilant about perceived dangers" as a result of PTSD "don't generally act out." Instead, "they're more likely to withdraw to protect themselves." Additionally, Jacobson's "cold" expert, Dr. Geffner, testified regarding the dynamics of domestic violence and general character traits of people who suffer from PTSD. Nothing in Dr. Geffner's testimony indicates victims of domestic abuse are generally impulsive, further suggesting the PTSD diagnoses were not admissible to show impulsiveness.[9] In the absence of any testimonial support for the notion that a person with domestic violence-induced PTSD generally exhibits impulsivity, the PTSD diagnoses may have simply left jurors to believe Jacobson was suffering from diminished capacity and therefore was not capable of knowingly or intentionally committing the murder. See Clark , 548 U.S. at 775, 126 S.Ct. 2709 (noting that a mental health diagnosis may mislead jurors by suggesting that "a defendant suffering from a recognized mental disease lacks cognitive, moral, volitional, or other capacity, when that may not be a sound conclusion at all"); see also Ariz. R. Evid. 403 (permitting the exclusion of evidence whose "probative value is substantially outweighed by a danger of ... confusing the issues").
¶ 20 The Richter decision characterized PTSD testimony, including what appears to be a diagnosis, as "observational evidence" of a character trait, which is not precluded by Mott . See Richter , 243 Ariz. at 137, ¶ 20, 402 P.3d at 1022. We respectfully disagree. A PTSD diagnosis and testimony regarding an expert's observations of a person's character traits are not interchangeable. We hold that a PTSD diagnosis is "opinion testimony going to mental defect ... and its effect on the cognitive or moral capacities on which sanity depends," which, "under the Arizona rule, is restricted." Clark , 548 U.S. at 760, 126 S.Ct. 2709 ; see also Mott, 187 Ariz. at 544, 931 P.2d at 1054. Accordingly, we find no abuse of discretion in the rejection of this evidence.
II. Pregnancy Testimony
¶ 21 Jacobson argues the trial court erred when it precluded Dr. Hibbert's "cold" expert testimony regarding the effect of increased cortisol levels in the late stages of pregnancy. The State contends Dr. Hibbert's testimony was merely an additional attempt to introduce inadmissible diminished-capacity evidence. In its ruling, the court stated:
I do believe this would be improper expert testimony regarding the issues of hormonal changes when given that the defendant was about to give birth. ... Dr. Hibbert testified that there are hormonal changes during pregnancy that can affect cognition. And when she was asked to explain what she meant by that, that she said it could affect planning, thinking, mental state, judgment, insight, perception and memory. The Court believes that this ... would be improper evidence of potential diminished capacity.
We agree with the trial court's assessment; the proposed testimony amounted to diminished-capacity evidence. Dr. Hibbert's remarks about cognition illustrate that the only purpose of introducing the testimony was to suggest to the jury that Jacobson acted with cortisol-driven diminished capacity at the time of the murder, prohibited by Mott. See supra ¶ 18.
¶ 22 Not only was the "cold" expert testimony inadmissible as diminished-capacity evidence, it was also not relevant to the self-defense claim. Self-defense claims, other than those arising under A.R.S. § 13-415, are evaluated on a "reasonable person" standard. See State v. Oaks , 209 Ariz. 432, 434, ¶ 9, 104 P.3d 163, 165 (App. 2005) ("By its very nature, the term ['reasonable person'] connotes an objective standard of conduct, not a subjective standard," which "does not take into account the individual characteristics of the accused.") (citing *967 State v. Serrano , 145 Ariz. 498, 501, 702 P.2d 1343, 1346 (App. 1985), and then State v. Tuzon , 118 Ariz. 205, 209, 575 P.2d 1231, 1235 (1978) ). Jacobson's pregnancy is not relevant to either the reasonable person standard, or the reasonable victim of domestic violence, but instead is an individual characteristic entitled to no special consideration. Accordingly, the trial court did not abuse its discretion when it precluded Dr. Hibbert's testimony.
III. Due Process
¶ 23 Finally, Jacobson argues that by precluding the PTSD diagnoses, the trial court "left [her] with no vehicle to bolster her abuse claims," and thereby deprived her of a complete defense. It needs first be noted that it is not within the purview of the court to allow otherwise inadmissible evidence to "bolster" a defense. Further, the doctors, evaluating Jacobson solely for issues attendant to a severance proceeding, admitted having premised their diagnoses solely upon Jacobson's statements. Because Jacobson failed to provide essential, requested information to the doctors, she left them in the position of only being able to assess the incomplete history she provided, and such testimony would impermissibly vouch for Jacobson's credibility. See supra ¶¶ 16-17. Moreover, beyond anything the doctors were competent to contribute, Jacobson had sufficient opportunity to present further evidence of Marvin's past acts of domestic abuse. Jacobson presented testimony from her obstetrician and her family physician, who both testified Jacobson had reported physical abuse from Marvin before the shooting. Jacobson called both of Marvin's ex-wives, who testified he was emotionally abusive during their respective relationships with him. Finally, Jacobson called Dr. Geffner, to testify regarding the general attributes of domestic violence victims. Indeed, within her reply brief, Jacobson admits that she presented evidence to the jury that she was a victim of domestic abuse and that Marvin was the perpetrator of the abuse.
¶ 24 Jacobson had sufficient opportunity to prove Marvin committed acts of domestic violence against her, and the trial court gave the jury a detailed instruction related to the "reasonable victim of domestic violence" standard, including a list of what constituted past acts of domestic violence. Accordingly, we find no violation of Jacobson's due process rights to a complete defense.
CONCLUSION
¶ 25 Jacobson's conviction and sentence for first-degree murder are affirmed.

"We view the facts in the light most favorable to sustaining the jury's verdict." State v. Randles , 235 Ariz. 547, 548 n.1, ¶ 1, 334 P.3d 730, 731 (App. 2014) (citing State v. Vandever , 211 Ariz. 206, 207 n.2, ¶ 1, 119 P.3d 473, 474 (App. 2005) ).

Jacobson later told a detective there was no struggle for the gun and even admitted Marvin's head was "on the pillow" after she fired the gun. At trial, the State presented evidence showing the gun was fired from only four inches away.

"Cold" expert testimony "educates the trier of fact about general principles but is not tied to the particular facts of the case." State v. Salazar-Mercado , 234 Ariz. 590, 595, ¶ 21, 325 P.3d 996, 1001 (2014) (noting that "expert testimony about general behavior patterns of child sexual abuse victims may help the jury to understand the evidence," including "possible reasons" for the victims' unusual behavior) (citations omitted).

Jacobson only appeals her conviction and sentence for first-degree murder and therefore waives any claim of error as to her convictions and sentences for tampering with physical evidence.

Absent material changes from the relevant date, we cite a statute's current version.

The modified reasonable person standard in A.R.S. § 13-415 is only available for claims of self-defense or defense of third persons. See A.R.S. § 13-415 (limiting standard to defenses arising under A.R.S. §§ 13-404, -405, and -406). Moreover, the modified reasonable person standard does not replace the objective perspective with a subjective perspective. See Vogel , 207 Ariz. at 285 n.4, ¶ 28, 85 P.3d at 502.

Although the Richter court consistently refers to the expert's testimony in more general terms as "PTSD testimony," the defendant there expected the expert to testify "that she suffers from ... PTSD ... based on 'the many months, if not years, of abuse she suffered at the hands of [her husband].' " See Richter , 243 Ariz. at 134, ¶ 8, 402 P.3d at 1019-20.

Although the trial court permitted Jacobson to call Drs. Rose and Linskey to testify regarding her general character traits at trial, she chose not to do so, and thus forfeited an opportunity to introduce the testimony she now argues was relevant to show she did not premeditate the killing.