NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERICHO RAGSDALE SPRIGGS, *Appellant.*

No. 1 CA-CR 16-0575
FILED 8-17-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-138845-001
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Tennie B. Martin
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Maria Elena Cruz joined.

**O R O Z C O**, Judge:

**¶1**        Appellant Jericho Ragsdale Spriggs appeals his convictions and sentences for armed robbery and aggravated robbery. Spriggs argues the State impermissibly impeached him with his post-arrest silence. For the following reasons, we affirm Spriggs's convictions and sentences.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**        In August 2015, the victim, GJ, was returning home to his apartment, when he was followed into the complex's secured lot by a Nissan Maxima. As he walked toward his apartment, someone touched GJ on the shoulder. GJ turned and saw Spriggs and an accomplice pointing guns at him. Spriggs put a gun to GJ's head and shoved him against a wall. Spriggs was wearing black pants, a black shirt, a baseball hat with a blue bandana underneath, and blue gloves. Spriggs's gun was black and chrome, and his accomplice's gun was black.

**¶3**        The men took GJ's wallet, keys, and phone and then ran back into the parking lot. The men were unable to leave the parking lot without a remote to open the gate. GJ asked a neighbor to call the police and retrieved his spare keys to chase the men in his vehicle. GJ used his vehicle to block the men into a corner of the parking lot, forcing them to abandon the Maxima and jump the fence. Spriggs's fingerprints were later discovered inside the Maxima.

**¶4**        Phoenix police detective RM noticed Spriggs walking along a road in an area near the apartment complex. Spriggs "was sweating profusely," was wearing black pants and a backpack, and had gloves hanging from his back pocket. Detective RM discovered two pairs of keys in Spriggs's possession, one set of which belonged to GJ. Spriggs also had a

---

[1]        The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

blue bandana in his front pocket and a chrome and black gun in his backpack. About twenty minutes after the robbery, GJ identified Spriggs as one of the men who robbed him.

**¶5** Spriggs testified that, on the night of the robbery, he finished work at a nearby store around midnight and called his wife for a ride home. Spriggs received a call from his wife's cousin's boyfriend, who offered to give him a ride in the Maxima, a vehicle in which Spriggs had previously ridden several times. Spriggs asked the driver to drop him off at a nearby home so he could purchase marijuana cigarettes and left his backpack in the Maxima.[2] Spriggs testified that, as he was walking toward the meeting point, he saw the driver running toward him. The driver handed Spriggs's backpack to him and told Spriggs to run, which he did. Spriggs testified the first time he saw the black and chrome gun was when it was pulled out of his backpack by the police.

**¶6** During the trial, the State impeached Spriggs with the inconsistencies between his testimony and his statements to police. The State also referenced Spriggs's inconsistent statements during closing argument. Spriggs was convicted of armed robbery and aggravated robbery, and he pled guilty to misconduct involving weapons. He was sentenced to concurrent terms of 15.75, 11.25, and 10 years' imprisonment, respectively.

**¶7** Spriggs timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21.A.1., 13-4031, and 13-4033.A.1.[3]

## DISCUSSION

**¶8** Because Spriggs did not object at trial to the questioning which forms the basis of his appeal, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (citation omitted). Error is fundamental when it affects the foundation of the case, deprives the defendant of a right essential to his defense, or is an error of such magnitude that the defendant could not possibly have had a fair trial. *Id.* (citation and

---

[2]     In response to a juror question, Spriggs testified he ate the marijuana cigarettes in the back of the police cruiser.

[3]     We cite to the most recent version of statutes unless changes material to this decision have occurred.

quotation omitted). To obtain reversal for fundamental error, the defendant bears the burden to show the error was prejudicial. *Id*. at ¶ 20.

**¶9** A prosecutor may not comment on a defendant's post-arrest, post-*Miranda* silence as evidence of guilt, even for impeachment purposes. *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976); *State v. Ramirez*, 178 Ariz. 116, 125 (1994) (citations omitted). A prosecutor may, however, comment on a defendant's post-*Miranda* statements "because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Ramirez*, 178 Ariz. at 125 (citation and quotation omitted). "When one who has voluntarily made statements to police officers after his arrest makes new exculpatory statements at trial, the fact that he failed to make these statements earlier may be used for impeachment." *State v. Tuzon*, 118 Ariz. 205, 207 (1978) (citation omitted).

**¶10** Spriggs asserts the State impermissibly impeached him at trial, despite testifying that he invoked his right to counsel and to remain silent. However, after having invoked, Spriggs did not remain silent. Rather, Spriggs answered several of the detective's questions by claiming he knew nothing about the robbery.[4] The interview ended when Spriggs requested counsel. The State impeached Spriggs's testimony at trial with his previous statements to police, including his assertion that he had no knowledge of the robbery. It is of no consequence that Spriggs explained his inconsistent statements by noting he "learned never to give a statement to the police because they like to twist your words and anything. . . . I rather talk to my legal counsel to advise what to say and what not to say." The court did not err in allowing the State to impeach Spriggs with his prior inconsistent statements because those statements were not involuntarily made and they were in contradiction to the new statements made at trial. *See id*.

---

[4] Spriggs frequently admitted he told the detective he had no knowledge of the events in question. For example:

> Q. Okay. [The] Detective . . . asked you to tell him more about the details and incident and how this key got in your pocket. And your response was, I don't know what you're talking about.
> A. Exactly.

## CONCLUSION

¶11      For the reasons stated above, we affirm Spriggs's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA